**Michael HINGSON, Plaintiff-Appellant,**

v.

**PACIFIC SOUTHWEST AIRLINES, a California corporation, Defendant-Appellee.**

**No. 83–5925.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1984.

Decided Oct. 2, 1984.

Marc Maurer, The Maurer Law Firm, P.A., Baltimore, Md., for plaintiff-appellant.

Drew Pomerance, Kern, Wooley & Maloney, Los Angeles, Cal., for defendant-appellee.

Before GOODWIN, SNEED, and ALARCON, Circuit Judges.

SNEED, Circuit Judge:

Michael Hingson, a blind person, in this appeal challenges certain evidentiary rulings in the course of a trial of a claim under 49 U.S.C. § 1374(b) and directed verdicts against him in several other causes of action brought against Pacific Southwest Airlines (PSA). These claims arose from the airline's insistence that Hingson sit in a bulkhead seat, i.e., the front row of the passenger section of an aircraft. We affirm the entry of directed verdicts against Hingson. The district court erred, however, in the challenged evidentiary rulings. Because of this error, we reverse and remand this case for a new trial on Hingson's claims under 49 U.S.C. § 1374(b).

### I.

### FACTS AND PROCEEDINGS BELOW

Michael Hingson is blind and travels with a guide dog. On September 18, 1980, a PSA employee told Hingson he could not board PSA's 9:15 a.m. flight from Los Angeles to San Francisco because PSA policy required blind passengers to occupy bulkhead seats and these seats were full. Hingson then purchased a ticket for and boarded PSA's 10:15 a.m. flight. Crew members asked him to sit in a bulkhead seat. Hingson insisted that PSA policy did not require him to sit in the front row. The pilot, Captain Claessens, told Hingson to take a bulkhead seat or to leave the aircraft. After Hingson refused to leave, PSA's Customer Service Manager, Darrell Everage, summoned Los Angeles police officers, who escorted Hingson off the aircraft.

Hingson thereafter filed suit in federal court alleging that PSA's actions constituted unlawful discrimination. His complaint listed fourteen causes of action under federal and state statutes and state common law. The case proceeded to trial before a jury on April 26, 1983. After the close of plaintiff's evidence, the district court granted PSA's motion for a directed verdict on all of the causes of action except Hingson's claims under section 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b). On May 3, 1983, the jury returned a verdict for PSA. Hingson appeals pursuant to 28 U.S.C. § 1291.

### II.

### DISCUSSION

We shall first consider whether the trial court erred in its challenged evidentiary rulings and thereafter determine whether the directed verdicts on various causes of action asserted by Hingson under state and federal law were proper.

A. *The District Court's Evidentiary Rulings*

In order to analyze the parties' arguments on the evidentiary issues, it is necessary to examine the features of a cause of action under section 404(b) of the Federal Aviation Act. That section provides in pertinent part:

> No air carrier or foreign air carrier shall ... subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

49 U.S.C. § 1374(b).[1]

Section 404(b) creates a private cause of action for passengers who suffer

---

1. As part of the Airline Deregulation Act of 1978, § 404(b) ceased to be in effect on January 1, 1983. *See* 49 U.S.C. § 1551(a)(2)(B).

unjust discrimination or unreasonable prejudice. *See Archibald v. Pan American World Airways,* 460 F.2d 14, 16 (9th Cir. 1972); *Fitzgerald v. Pan American World Airways,* 229 F.2d 499 (2d Cir.1956). Handicapped passengers who are injured by unreasonable discrimination or prejudice on the part of air carriers may recover compensatory damages under section 404(b). Moreover, punitive damages are recoverable if the defendant has acted "wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations." *See Archibald,* 460 F.2d at 16 (quoting *Wills v. Trans World Airlines,* 200 F.Supp. 360, 367–68 (S.D.Cal.1961)).

The contested evidentiary rulings arose from Hingson's efforts to show that PSA violated section 404(b) by insisting that Hingson take a bulkhead seat. The district court excluded the testimony of Norman Waters, PSA's Director of Planning and Control for Flight Operations, and limited the introduction of PSA policy manuals. Hingson contends these actions constitute reversible error. We agree with respect to the testimony of Waters.

 Waters' testimony was offered to establish that PSA's official policy, as stated in the policy manuals and in documents filed with the Federal Aviation Administration, was that blind persons were not restricted to the bulkhead seats. The offer of proof indicates that Waters would have testified that PSA policies were not followed in this case, and that considerations of convenience and safety did not require

that Hingson occupy a bulkhead seat. The district court refused to admit Waters' testimony on the grounds that Waters was not an officer or a director, and therefore his statements could not bind PSA. Hingson then sought to have Waters testify as an expert witness. The court refused on the grounds that Hingson wanted Waters to represent PSA in his testimony. The district court also initially refused to admit the PSA policy manuals, which state that blind passengers should be allowed to sit anywhere except by emergency exits. After Hingson concluded his presentation of evidence, the court admitted the relevant portions of the Station Operations Manual and the Flight Operations Manual.[2]

The district court refused to allow Waters to testify as an expert for Hingson because Waters worked for PSA.[3] The Federal Rules of Evidence clearly indicate the desirability of testimony by a qualified expert if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. If the testimony is otherwise admissible under Rule 702, the fact that Waters worked for PSA does not preclude his appearance as an expert witness for Hingson. *Cf. Dunn v. Sears, Roebuck & Co.,* 639 F.2d 1171, 1174, *modified on other grounds,* 645 F.2d 511 (5th Cir.1981) (products liability defendant may offer employee as expert witness). The district court could use an appropriate instruction to prevent the jury from drawing any improper inferences from PSA's employment of Waters.[4]

---

2. The district court did not commit reversible error in limiting the introduction of the policy manuals. The relevant portions of the manuals were introduced, and Claessens and Everage were questioned regarding their content. Hingson argues that he was unable to use the manuals to prove PSA's policy for the seating of blind passengers because the district court admitted them for the limited purpose of proving the unreasonableness of PSA's actions. This argument is meritless. Hingson argued at length in his closing argument that PSA had acted inconsistently with its own procedures, and he read to the jury the relevant portions of the policy manuals.

Hingson's argument that he could not effectively examine Claessens and Everage because

the manuals were admitted after they testified is also unpersuasive. Hingson questioned them about the manuals, and he could have asked that they return to the witness stand if further questioning was necessary after the manuals were introduced.

3. It is unclear whether Waters still worked for PSA when Hingson's case proceeded to trial.

4. The district court initially excluded the testimony on the grounds that Waters was not authorized to make binding admissions on behalf of PSA. This ruling confuses the criteria for admissibility of testimony with that for determining if a corporation is legally bound by the acts of its employees. The district court did not

The district court's exclusion of Waters' testimony, however, cannot constitute reversible error unless Waters satisfied the requirements of Rule 702 for the admissibility of expert testimony. Consequently, we must be satisfied that his testimony would have assisted the trier of fact to understand the evidence or to determine a fact in issue. PSA argues that Waters' testimony was needlessly cumulative and thus properly excluded under Fed.R.Evid. 403. Admission of the manuals made his testimony unnecessary. This argument has merit only to the extent Waters would have testified as to the *content* of the manuals. However, his testimony concerning the *preparation* of the manuals and the *considerations* that underlie the provisions related to seating of blind passengers clearly would have assisted the jury in understanding the evidence.

■ The testimony of Claessens strengthens our conviction that the offered testimony by Waters would have assisted the jury. The parties agree that the basic issue in this case is whether PSA acted unreasonably in demanding that Hingson take a bulkhead seat. Captain Claessens testified at length that safety concerns justified his actions. He also testified that under federal regulations, the pilot in command has the ultimate responsibility to make decisions for the safe operation of the aircraft.[5] When asked how he regarded the policy manuals, he stated that the provisions were intended only as a guide. Waters, according to the offer of proof, would have testified that the safety concerns expressed by Captain Claessens were already reflected in the policy manuals and

that such concerns did not require that Hingson sit in a bulkhead seat. We doubt not that the testimony of Waters could have assisted the jury in determining if PSA's actions were unreasonable.[6]

The offer of proof also indicates that Waters was qualified to testify as an expert witness. Rule 702 states that an expert witness is qualified by his "knowledge, skill, experience, training, or education." Waters worked for PSA for eight years and served as the airline's Director for Planning and Control for Flight Operations. In this capacity, he studied the problem of accommodating handicapped passengers and drafted the PSA policies stating that blind passengers should not be restricted to the bulkhead seats. It is difficult to imagine a person better qualified to comment on the preparation of the PSA policy manuals or to offer an opinion whether the circumstances justified a departure from the airline's own policies.

Because the exclusion of the testimony of Waters was manifestly erroneous and affected a substantial right of Hingson, *see* Fed.R.Evid. 103(a), we reverse the district court on this issue and remand the case for a new trial on Hingson's claims under section 404(b).

**B.** *The Directed Verdicts on the Section 404(a) Claims*

The situation is different with respect to Section 404(a) of the Federal Aviation Act, however. It provides:

It shall be the duty of every air carrier to provide and furnish interstate and overseas air transportation, as authoriz-

rule, and PSA has not argued, that Waters' testimony should be excluded pursuant to Fed.R. Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

**5.** Although Claessens did not refer to the specific regulation, 14 C.F.R. § 91.3 (1983) provides that the pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft. The trial judge included the language from this regulation in his instructions to the jury.

**6.** We note that neither Claessens's good faith nor the responsibility and authority given a pilot by federal regulations precludes a finding that PSA violated § 404(b) by requiring Hingson to occupy a bulkhead seat. *Cf. Cordero v. Cia Mexicana de Aviacion,* 681 F.2d 669, 671–72 (9th Cir.1982) (statutory provision in 49 U.S.C. § 1511(a) allowing carrier to exclude passengers for safety concerns does not limit protections afforded by 49 U.S.C. § 1374(b)). Instead, the test is whether the airline acted reasonably based on the information available when the decision was made. *See id.* at 672.

ed by its certificate, upon reasonable request therefor and ... to provide safe and adequate service, equipment, and facilities in connection with such transportation ....

49 U.S.C. § 1374(a).[7]

 The district court directed a verdict for PSA on Hingson's claims under section 404(a) on the grounds that there was no showing of damage. Hingson argues that he submitted evidence of damages sufficient for this issue to go to the jury. We need not resolve this dispute. This is because in reviewing the propriety of a directed verdict, we apply the same standard as does the district court: a directed verdict is proper if the evidence permits only one reasonable conclusion. *See, e.g., California Computer Products, Inc. v. IBM,* 613 F.2d 727, 732–34 (9th Cir.1979).

 Inasmuch as we conclude that there is no private cause of action under section 404(a), we must affirm the district court, albeit on a ground other than that it employed. The Fifth Circuit refused to imply a private cause of action under Section 404(a) in *Diefenthal v. CAB,* 681 F.2d 1039, 1049–50 (5th Cir.1982), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). Its analysis and application of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which establishes the standard for determining if a statute creates an implied private cause of action, is quite persuasive. *Cf. In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400, 406–408 (9th Cir.1983) (no implied private action for violation of safety provisions of

Federal Aviation Act); *Montgomery v. American Airlines,* 637 F.2d 607, 610 (9th Cir.1980) (no private action based on claim that airline's reduced fare policy for employees violated Federal Aviation Act), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

## C. *The Directed Verdicts on the Claims Under Section 504 of the Rehabilitation Act*

Section 504 of the Rehabilitation Act of 1973 presents a different problem. It provides in pertinent part:

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794.

This court recognized a private cause of action for violations of section 504 in *Kling v. County of Los Angeles,* 633 F.2d 876, 878 (9th Cir.1980). The district court, however, directed a verdict for PSA on the section 504 claims on the grounds that PSA does not receive "federal financial assistance." We agree.

 Hingson insists that section 504 applies to PSA because it receives money from the government as payment for carrying the mail.[8] Government mail contracts, however, constitute "federal financial assistance" for purposes of section 504 only if they involve a subsidy to the airline.

---

7. The Airline Deregulation Act of 1978 provided that § 404(a) ceased to be in effect on January 1, 1983, except insofar as the section requires air carriers to provide safe and adequate service. *See* 49 U.S.C. § 1551(a)(2)(B).

8. Hingson incorrectly states that regulations adopted by the Civil Aeronautics Board (CAB) to implement § 504 indicate that the statute applies to all airlines. In fact, the CAB concluded that § 504 itself applies only to air carriers receiving a subsidy under §§ 406 or 419 of the Federal Aviation Act. *See* 47 Fed.Reg. 25,937 (1982). *See also* 14 C.F.R. §§ 382.1–.25 (1983) (regulations implementing § 504). The CAB did conclude, however, that §§ 404(a) and (b) of

the Federal Aviation Act extend the principles of § 504 to all certificated air carriers.

HEW and Department of Justice regulations defining "federal financial assistance" also do not support Hingson. Both the HEW regulations, 45 C.F.R. § 84.3(h) (1983), and the Department of Justice regulations, 28 C.F.R. § 41.-3(e) (1983), indicate that federal financial assistance does not include government procurement contracts. *See also Cook v. Budget Rent-A-Car,* 502 F.Supp. 494 (S.D.N.Y.1980) (auto rental contracts with federal agencies do not make rental company a recipient of federal financial assistance).

*Jacobson v. Delta Airlines,* 742 F.2d 1202, 1210 (9th Cir.1984). Whether an airline is receiving a subsidy will ordinarily be determined by reference to the Civil Aeronautics Board (CAB). *Id.* at 1210. The CAB's published chart listing which airlines were receiving subsidies under section 406 of the Federal Aviation Act, 49 U.S.C. § 1376 (1976), indicates that PSA was not receiving such a subsidy at the time the alleged discrimination against the plaintiff occurred. *See* 14 C.F.R. Part 241 § 04 (1981); 45 Fed.Reg. 48867, 48870 (1980). We therefore conclude that section 504 does not apply to PSA and affirm the directed verdicts on plaintiff's claim under that section.

### D. *The Directed Verdicts on Claims Under State Statutes and Common Law*

The district court also directed a verdict for PSA on Hingson's claims under California Public Utilities Code § 494 and Civil Code § 54.1, and under California common law for intentional infliction of emotional distress. On appeal, Hingson has not challenged the directed verdicts on the claims under Public Utilities Code § 494. With respect to his claim under Civil Code § 54.1, the district court held that 49 U.S.C. § 1305(a) preempts the state law claims. Section 1305(a)(1) provides:

> [N]o state or political subdivision thereof and no interstate agency or other political agency of two or more states shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under Title IV of this chapter to provide interstate air transportation.

Section 54.1 of the California Civil Code provides in relevant part:

> Blind persons, visually handicapped persons, deaf persons, and other physically disabled persons shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats or any other public conveyances or modes of transportation, ... subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Cal.Civ.Code § 54.1(a).

In addition, Civil Code § 54.3 currently provides that a person who violates section 54.1 shall be liable for actual damages and any additional amount up to a maximum of three times actual damages, as well as attorney's fees, and Civil Code § 55 authorizes private actions for injunctive relief.[9]

Hingson argues that 49 U.S.C. § 1305(a)(1) does not preempt his claims because Civil Code Section 54.1 does not conflict with federal law. This argument misses the point. Section 1305(a)(1) preemption is not limited to those state laws or regulations that *conflict* with federal law. It preempts state laws and regulations "*relating* to rates, routes, or services." 49 U.S.C. § 1305(a)(1) (emphasis added). Regulation of air carrier seating policies for handicapped passengers involves the regulation of services within the meaning of section 1305(a)(1). *Cf.* 47 Fed.Reg. 25,937 (1982) (CAB statement that accommodation of handicapped travelers is an important element of "adequate service" required by § 404(a)). Indeed, the Civil Aeronautics Board has adopted regulations applicable to certificated air carriers that specifically address discrimination against the handicapped. *See* 14 C.F.R. §§ 382.2, 382.4, 382.5 (1983).[10] We conclude, therefore,

---

9. Before § 54.3 was amended in 1981, *see* 1981 Cal.Stat. ch. 395, § 1, the statute authorized recovery of actual damages and up to $1,000 in punitive damages for violations of § 54.1. *See* 1977 Cal.Stat. ch. 881, § 1. Because the actions Hingson complains of occurred in 1980, it is the version of § 54.3 as amended in 1977 that is relevant to this case.

10. The CAB relied in part on the adequate-service provision of § 404(a) as authority for adopting these regulations. Courts have previously held that this provision authorizes CAB

that Hingson's claims under California Civil Code section 54.1 are preempted.[11]

 Hingson's claims for intentional infliction of emotional distress, however, are not preempted. *Cf. Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (National Labor Relations Act does not preempt tort action for intentional infliction of emotional distress). Nonetheless, a directed verdict was proper because the evidence was insufficient to support a finding against PSA. An essential element for a cause of action for intentional infliction of emotional distress is outrageous conduct. *E.g., Life Insurance Co. of North America v. Capps*, 660 F.2d 392, 394 (9th Cir.1981) (affirming summary judgment for defendant on claim under California law). The actions by PSA employees that Hingson complains of cannot plausibly be characterized as either extreme or outrageous. The district court properly directed a verdict for PSA. *See Godfrey v. Steinpress*, 128 Cal.App.3d 154, 173, 180 Cal.Rptr. 95, 104 (1982).

E. *The Directed Verdicts on Claims for False Imprisonment and Assault*

Hingson also brought claims for assault and battery, false imprisonment, and the use of unnecessary force and violence in violation of Cal.Civ.Code § 2188. These claims are based on the actions of the Los Angeles police officers in removing Hingson from the aircraft. The district court directed a verdict on these claims on the grounds that there was no evidence that PSA employees committed the alleged tortious acts. Hingson relies on *Hudson v. Nixon*, 57 Cal.2d 482, 484, 20 Cal.Rptr. 620, 370 P.2d 324 (1962), to argue that the police officers were acting as PSA's agents, and PSA is therefore liable for their actions. *Hudson* states that a principal is liable for wrongs committed by an agent in transacting the principal's business; it does not, however, support Hingson's contention that the police officers were agents of PSA.

 Under California law, the right of the alleged principal to control the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency. *DeSuza v. Andersack*, 63 Cal.App.3d 694, 699, 133 Cal.Rptr. 920, 924 (1976). Hingson offered no evidence that PSA had the right to control the actions of the on-duty, Los Angeles police officers after they boarded the aircraft. In effect, Hingson argues that because PSA requested police assistance, the officers were transformed into agents of the airline. We reject this

---

regulation of smoking aboard aircraft. *See Action on Smoking and Health v. CAB*, 699 F.2d 1209, 1213–1215, *modified on other grounds*, 713 F.2d 795 (D.C.Cir.1983); *Diefenthal*, 681 F.2d at 1044–48.

11. We are not persuaded by Hingson's reliance on 49 U.S.C. § 1506, which provides that "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." *Id.* This section was enacted as § 1106 of the Federal Aviation Act of 1958, and was taken intact from a predecessor provision of the Civil Aeronautics Act of 1938. *See Klicker v. Northwest Airlines*, 563 F.2d 1310, 1314 (9th Cir.1977); H.R.Rep. No. 2360, 85th Cong., 2d Sess. 18–19, *reprinted in* 1958 U.S.Code Cong. & Ad.News 3741, 3758.

The legislative history of the Airline Deregulation Act of 1978 does not explain the relation between § 1506 and § 1305(a). A House report declares that § 1305(a) is intended to prevent conflicts and inconsistent regulations by preventing states from regulating routes, rates, or services of certain air carriers. H.R.Rep. No. 1211, 95th Cong., 2d Sess. 16, *reprinted in* 1978 U.S.Code Cong. & Ad.News 3737, 3752. The actual language in § 1305(a) was adopted in preference to an earlier Senate version of the Airline Deregulation Act that prohibited states "from enacting any law, establishing any standard determining routes, schedules, or rates, fares or charges in tariffs of, or otherwise promulgating economic regulations for" certificated air carriers. *See* H.R.Rep. No. 1779, 95th Cong., 2d Sess. 94–95 (1978).

Because California Civil Code § 54.1 would involve regulation of the services of an air carrier, we conclude that Hingson's claims under the state statute are preempted notwithstanding the savings clause in § 1506. *Cf. Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (§ 1506 allows common law action for misrepresentation).

proposition. PSA was entitled to directed verdicts on the claims for assault and false imprisonment.

## III.

## CONCLUSION

We reverse the judgment because of the district court's exclusion of the testimony of Norman Waters and remand this case for a new trial on Hingson's claims under section 404(b) of the Federal Aviation Act. The directed verdicts in favor of PSA on the remaining claims are affirmed. Each side shall bear its own costs on appeal.

AFFIRMED IN PART and REVERSED IN PART and REMANDED for further proceedings consistent with this opinion.