**Russell Wayne ANDERSON, Appellant,**

v.

**USAIR, INC.**

**No. 85-6050.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 19, 1986.

Decided May 5, 1987.

---

Peggy Pindar, with whom Mary T. Porter, Washington, D.C., was on the brief, for appellant.

Richard M. Sharp, Washington, D.C., for appellee.

Before BORK and BUCKLEY, Circuit Judges, and LOUIS F. OBERDORFER,* United States District Judge for the District of Columbia.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

USAir flight personnel refused to seat appellant Russell Anderson in an emergency overwing exit row because he is blind. Appellant promptly filed, *inter alia,* two statutory, three constitutional, and three common law claims challenging USAir's action. Although appellant pursues all but one of the claims on appeal, only a statutory claim is potentially compelling; namely, whether the airline, in refusing to seat Anderson, violated its duty "to provide safe and adequate service" pursuant to section 404(a) of the Federal Aviation Act of 1958 ("the Aviation Act" or "Act"), 49 U.S.C. app. § 1374(a) (1982).

Appellant bases the Aviation Act claim on final regulations promulgated in 1982 by the Civil Aeronautics Board ("CAB") which concluded that the "safe and adequate service" requirement provides the statutory authority to require all airlines to comply with a general provision prohibiting discrimination against the handicapped. *See* Nondiscrimination on the Basis of Handicap, Subpart A, 14 C.F.R. § 382.1–.5 (1986). We do not address the validity of the final regulations because, on an issue necessarily prior, we find that no congressional intent, express or implied, allows a private citizen to bring suit to enforce the Aviation Act's duty of "safe and adequate service." As there are no grounds to support appellant's remaining claims, the district court's grant of summary judgment in favor of appellee is affirmed.

## I. BACKGROUND

On February 6, 1985, Russell Anderson boarded USAir Flight 371, scheduled to depart Washington National Airport for Indianapolis. Anderson took his assigned seat in one of the two rows with emergen-

cy overwing exits. The DC–9 had a total of twenty-two rows. A USAir employee asked Anderson to move to a non-emergency seat, informing him that Federal Aviation Administration ("FAA") regulations barred blind passengers from sitting in the emergency exit row. Anderson, who is an attorney, disputed that such a regulation existed. A Passenger Service Representative, a Shift Supervisor, and the Assistant Customer Services Manager in turn asked Anderson to change seats.

After fifty-eight minutes, during which time appellant alleges other passengers shouted abuses at him without restraint by USAir employees, Anderson was arrested by an FAA police officer, taken into custody, and released one hour later without being charged. The FAA police contacted an Assistant U.S. Attorney who determined that the asserted FAA regulation barring blind persons from sitting in the emergency exit row did not exist.

USAir had a policy, however, duly filed with the FAA and conforming with FAA and CAB recommendations, that provided:

> During boarding, and throughout your flight, do not allow the following passengers to be seated in the Emergency Exit rows:
> —incapacitated passengers
> —children (12 and under)
> —women/men with babies
> —elderly/senile passengers
> —prisoners
> —blind passengers
> —obese passengers

*Anderson v. USAir,* 619 F.Supp. 1191, 1194 (D.D.C.1985).

USAir employees offered Anderson seating on the two next available flights that evening—either on USAir or TWA. Appellant requested a seat on USAir Flight 463, departing the next day, February 7.

According to appellee, Anderson returned the following day at about 5 p.m. and requested to be assigned to an emergency row seat. The USAir agent refused to do so and read a short statement that blind persons could not be seated in the

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

emergency exit row. The agent offered Anderson other seats, but he refused them. At the gate, Anderson, who had a ticket but no boarding pass, was told all the seats in emergency row twelve were occupied. The flight left without appellant, who remained at the USAir ticket counter with approximately fifty friends and supporters until 11 p.m.

Anderson filed suit the next day for injunctive relief and damages. The five counts of the complaint still at issue allege that USAir's emergency exit row seating policy violated (1) section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (prohibiting discrimination against the handicapped under programs or activities receiving federal financial assistance); (2) section 404(a) of the Federal Aviation Act, 49 U.S.C. app. § 1374(a) (obligating carriers "to provide safe and adequate service"); (3) plaintiff's constitutional rights, including the right to travel, and rights under the Commerce Clause and Fifth Amendment Due Process Clause; (4) the common law standards for the tort of outrage; and (5) plaintiff's contractual rights.

On May 10, 1985, the court denied appellant's motions for class certification and a permanent injunction. Discovery, by agreement of the parties, concluded May 13, 1985, and on May 24, cross-motions were filed for summary judgment. Appellant on the same day moved to amend his complaint, principally by deleting one count and adding five new counts, alleging slander and defamation, abuse of process or malicious prosecution, and negligent or fraudulent misrepresentation. The district court ruled that the motion to amend was untimely, superfluous, and would cause unnecessary delay. On September 30, 1985, the district court denied plaintiff's motion for summary judgment and granted defendant's cross-motion. 619 F.Supp. at 1198.

Anderson appeals the dismissal of all the counts. He also argues that the court committed error in denying the motion to amend and in relying on facts not in the record (*e.g.*, that 1985 was the worst year on record for air fatalities). We address in turn appellant's statutory claims, the constitutional and common law claims, and the charges of judicial error.

## II. ANALYSIS

### A. *Statutory Claims*

#### 1. Background

We briefly review the statutory and regulatory schema pertaining to discrimination charges against air carriers. A recent Supreme Court decision and an amendment to the Aviation Act enacted subsequent to the filing of this lawsuit require passing mention.

In his appellate brief, Anderson claimed that USAir's action violated section 504 of the Rehabilitation Act, which makes it unlawful to discriminate against "otherwise qualified handicapped individual[s]" involved in "any program or activity receiving federal financial assistance...." 29 U.S.C. § 794. In addition, according to appellant, USAir's action violated the "safe and adequate service" requirement of section 404(a) of the Federal Aviation Act.

Linking these two statutory claims, the CAB, pursuant to instructions issued to all agencies to insure compliance with the Rehabilitation Act, promulgated final regulations in 1982 with three subparts: a general prohibition against handicapped discrimination in air transportation (subpart A); detailed service requirements (subpart B); and compliance and enforcement mechanisms (subpart C). *See* 14 C.F.R. Pt. 382 (1986). On its own authority, but with the approval of the Attorney General, the CAB held that subpart A of the regulations extended to all commercial carriers pursuant to section 404. The CAB also ruled that by authority of section 504 of the Rehabilitation Act, subparts B and C applied to airlines receiving subsidies for mail transport and service to small communities. 47 Fed. Reg. 25,936–39 (1982).

In January 1985, one month before appellant filed his complaint in district court, this court reversed the CAB and ordered that regulations applicable to all commercial airlines issue pursuant to section 504 of

the Rehabilitation Act. *Paralyzed Veterans of America v. CAB,* 752 F.2d 694 (D.C.Cir.1985). Following this lead, the district court found that the regulations applied to USAir, but that seating blind persons in the overwing exit rows was safety-related and not discriminatory. Appellant vigorously denied the court could decide the safety issue as a matter of law given the scanty and questionable evidence presented. Brief for Appellant at 9–17. Rather, appellant asserted that USAir's "exclusionary seating policy is a classification on the basis of blindness unrelated to any legitimate interest in safety." *Id.* at 25.

After Anderson submitted his brief on appeal, but before oral argument, the Supreme Court in June 1986 overturned this court's conclusion (without addressing the application of the regulations pursuant to section 404 of the Aviation Act), holding that section 504 applies only to those commercial airlines receiving direct federal subsidies under section 406(b) or section 419 of the Aviation Act. *United States Dep't of Transp. v. Paralyzed Veterans of America,* — U.S. —, 106 S.Ct. 2705, 2710, 91 L.Ed.2d 494 (1986) (hereinafter *"PVA"*). As USAir affirmed by affidavit that it does not receive such subsidies, appellant withdrew his section 504 claim at oral argument.

■ Congress, however, subsequently passed legislation, approved October 2, 1986, that effectively overruled the *PVA* decision by amending the Federal Aviation Act. *See* Air Carrier Access Act of 1986, Pub.L. No. 99–435, 100 Stat. 1080 (1986). The Act provides in pertinent part:

(c)(1) No air carrier may discriminate against any otherwise qualified handicapped individual, by reason of such handicap, in the provision of air transportation.

(2) For the purposes of paragraph (1) of this subsection the term "handicapped individual" means any individual who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

(to be codified at 49 U.S.C. app. § 1374(c)).

Passage of the Act, however, has no effect on the present case. "[S]tatutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985) (citations omitted); *accord United States v. Security Indus. Bank,* 459 U.S. 70, 79–80, 103 S.Ct. 407, 412–13, 74 L.Ed.2d 235 (1982); *Winfree v. Northern Pacific Ry.,* 227 U.S. 296, 302, 33 S.Ct. 273, 274, 57 L.Ed. 518 (1913) (prospective application for statutes that "permit[ ] recovery … in cases where recovery could not be had before"). This "venerable rule of statutory construction," *Bennett,* 470 U.S. at 639, 105 S.Ct. at 1560 applies equally to amendatory statutes. *See, e.g., DeRodulfa v. United States,* 461 F.2d 1240, 1247 (D.C. Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972); *Hospital Employees Labor Program of Metropolitan Chicago v. Ridgeway Hospital,* 570 F.2d 167, 169–70 (7th Cir.1978) (quoting *In re Reilly,* 442 F.2d 26, 28 (7th Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971) ("[A]mendatory statutes generally operate prospectively only absent strong congressional intent to the contrary....")). In the instant case, neither the plain meaning of the statute nor the legislative history evince any such "strong intent," or indeed any intent at all on this matter. *See* S.Rep. No. 400, 99th Cong., 2d Sess. 1 (1986), U.S.Code Cong. & Admin. News 1986, p. 2328. The same conclusion is reached following the Supreme Court's analysis that the rule applying new law to pending cases does not operate when a law imposes, as here, "new and unanticipated consequences...." *Bradley v. School Bd. of the City of Richmond,* 416 U.S. 696, 720, 94 S.Ct. 2006, 2021, 40 L.Ed.2d 476 (1974); *Bennett,* 470 U.S. at 639–40, 105 S.Ct. at 1560–61. Finally, appellant makes no claim pursuant to the Air Carrier Access Act in the present appeal nor do we rule whether he would have a private right of action.

Thus appellant is left here with only one statutory claim, section 404(a) of the Aviation Act, to which we now turn.

### 2. Section 404(a) of the Federal Aviation Act

■ Effective January 1, 1983, the Airline Deregulation Act of 1978, Pub.L. No. 95–504, 92 Stat. 1705, repealed all of former section 404 of the Aviation Act, including section 404(b), 49 U.S.C. app. § 1374 (1982), except the sole requirement that air carriers "provide safe and adequate service." 92 Stat. at 1744 (codified at 49 U.S.C. app. § 1551(a)(2)(B) (1982)). On its face, the surviving words of section 404(a) do not expressly grant private citizens a cause of action to remedy perceived violations by carriers. Nor is there anything in the legislative history to suggest that section 404(a) was passed for the special benefit of Anderson's class.

Appellant's right to bring suit under this section thus depends on a finding of an implied private right of action. Specifically, the controversy turns on whether Congress intended that violations of section 404(a) be remedied by aggrieved individuals or solely by the agencies charged with enforcement of the statute—the Department of Transportation ("DOT") and the FAA. Applying the framework articulated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), we hold that Congress did not impliedly create a mechanism for private enforcement of section 404(a). The fifth and ninth circuits have already reached this conclusion. *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408 (9th Cir.1984); *Diefenthal v. CAB*, 681 F.2d 1039 (5th Cir.1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). In seeking to distinguish these two cases, appellant argues that the 1983 repeal of section 404(b), an anti-discrimination provision, requires a new interpretation of section 404(a). We disagree.

The Supreme Court in *Cort v. Ash* listed four criteria relevant to discerning congressional intent regarding private remedies:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of an action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted) (emphasis in original).

The "especial benefit" test does not reasonably include Anderson. Section 404(a) "requires as a general matter that the airlines maintain a certain level of service. The Court has recognized that phrasing a statute in general terms rather than specifically identifying the benefitted class indicates a lack of intent to create a private right of action." *Diefenthal*, 681 F.2d at 1049 (citations omitted). By contrast, section 404(b) which prior to its repeal in 1983 had been interpreted to provide a private right of action, *see, e.g., Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 537–38 (D.C.Cir.1975), *rev'd on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), specifically names the entities protected from "unjust discrimination":

No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to *any particular person, port, locality, or description of traffic* in air transportation in any respect whatsoever or subject *any particular person, port, locality, or description of traffic* in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

49 U.S.C. app. § 1374(b) (1982) (repealed 1983) (emphasis added). Given the marked difference in phrasing between section 404(a) and 404(b), it is evident Congress was as fully capable of specifying "especial" beneficiaries in the former as it did in the latter.

As to the second prong, the existence of an express or implied legislative intent to create a private remedy, we note that the Aviation Act establishes an extensive and detailed scheme of administrative enforcement complete with civil and criminal penalties, on-going regulation, and agency power to seek enforcement of the Act through injunctive relief. 49 U.S.C. app. §§ 1421(a)(6), 1471, 1472, 1482(d)(3), 1487 (1982); *see In re Mexico City Aircrash of October 31, 1979*, 708 F.2d 400, 407 (9th Cir.1983); *Diefenthal*, 681 F.2d at 1049. "Because of the Act's emphasis on administrative regulation and enforcement, we conclude that 'it is highly improbable that "Congress absentmindedly forgot to mention an intended private action." ' " *In re Mexico City Aircrash*, 708 F.2d at 407 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979), quoting *Cannon v. University of Chicago*, 441 U.S. 677, 742, 99 S.Ct. 1946, 1981, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting)).

We also note that the 1958 Act expressly allows a private right of action in one restricted circumstance, reinforcing the conclusion that section 404(a) is not similarly covered. Section 1007 of the Act, 49 U.S.C. app. § 1487(a) (1982), allows "any party in interest" to bring suit, for injunctive relief only, against carriers operating without a certificate. It is an "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981) (quoting *Transamerica*, 444 U.S. at 19, 100 S.Ct. at 246); *In re Mexico City Aircrash*, 708 F.2d at 407.

Appellant in this case makes no argument that the Act's legislative history suggests an implied private right of action, nor have we or previous courts uncovered any such evidence. *See* 708 F.2d at 407. In short, the evidence is overwhelming that under section 404(a) of the 1958 Act "the second and arguably most significant part of the *Cort* test, whether there is any indi-cation of a congressional intent to create a private right of action, is unsatisfied." *In re Mexico City Aircrash*, 708 F.2d at 408; *see id.* at 408 n. 12 (collecting majority cases denying private right of action under the Act). In the absence of congressional intent to provide a private remedy under the first two prongs of *Cort*, analysis under the final *Cort* factors is unnecessary. *See id.* at 408 (citing *California v. Sierra Club*, 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981)); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979); *Transamerica*, 444 U.S. at 23–24, 100 S.Ct. at 249.

Appellant makes one novel argument to advance his Federal Aviation Act claim; namely, that the repeal of section 404(b), which had been construed to provide a private right of action to remedy acts of discrimination by airline carriers, alters the construction of whether a private remedy exists under section 404(a). Appellant offers no evidence that Congress intended by implication to transpose this private right of action, nor is it reasonable to conclude that such a purpose informed the passage of the Airline Deregulation Act of 1978, pursuant to which section 404(b) was repealed. Common sense dictates that repeal means a deletion. This court would engage in pure speculation were it to hold otherwise.

■ The analysis under the *Cort* guidelines confirms that no private remedy exists under section 404(a), with or without a private remedy under former section 404(b). Nevertheless, the absence of a private remedy does not leave airlines free to deny "safe and adequate service." A party alleging that an airline failed to provide the requisite service can pursue an appropriate administrative remedy. Under the Aviation Act, the DOT or the FAA is empowered to bring suit directly against an airline or seek other statutorily defined relief. *See Anderson*, 619 F.Supp. at 1195–96; 49 U.S.C. app. §§ 1421(a)(6), 1511(a) (1982); 49 U.S.C. app. §§ 1471, 1472, 1482(d)(3), 1487 (1982 and Supp. III 1985). In the instant case, however, appellant did not urge the

DOT or the FAA to investigate and bring charges.

### B. *Constitutional and Common Law Claims*

#### 1. Constitutional claims

Appellant alleges that the USAir exclusionary seating policy violates the Fifth Amendment due process clause and its equal protection component, the commerce clause, and his right to travel. As the district court opinion capably analyzes these claims, the discussion here will be brief.

We agree with Judge Harris that the Fifth Amendment claim fails because USAir, a private corporation, is not a state actor. *Anderson v. CAB*, 619 F.Supp. at 1196. USAir is not transformed into a government actor by regulation, *cf. Blum v. Yaretsky*, 457 U.S. 991, 1007–08, 1009–10, 102 S.Ct. 2777, 2787–88, 2788–89, 73 L.Ed.2d 534 (1982) (private nursing home); government certification, *cf. id.* at 1004–05, 102 S.Ct. at 2785–86; receipt of federal or state assistance, *cf. Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (privately operated school); or by the intervention of FAA police to remove appellant from the airplane, *cf. Dahlberg v. Becker*, 748 F.2d 85, 92–93 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) (action of sheriff not sufficient for state action).

We also reject appellant's suggestion that the amalgam of contacts between USAir and the government, even if insufficient taken separately, transforms the airline into a state actor, citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In that case, a private restaurant had leased space in a building owned and occupied by an agency of the state. In a holding explicitly limited to the facts, *id.* at 726, 81 S.Ct. at 862, the Court found that "[t]he State has so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant in the challenged [discriminatory] activity...." *Id.* at 725, 81 S.Ct. at 862. Whereas the restaurant "operated as an integral part of a public building devoted to a public parking service," *id.* at 724, 81 S.Ct. at 861, USAir has not undertaken to perform a service for the government or entered into a symbiotic relationship with the government. The requisite interdependence is not reached here.

Absent state or federal action, appellant's remaining constitutional claims must be rejected. Appellant never sought to connect the seating policy to actions of a state government, but even if he had so shown, commerce is not impermissibly burdened when the restriction applies to only two of twenty-two rows. In fact, the actual thrust of appellant's case presumes the policy derived from federal involvement in the operation of the airline industry. But as to the federal government, it is well established that a policy intimately related to interstate air travel would not exceed the scope of the commerce clause. *See generally Morgan v. Virginia*, 328 U.S. 373, 380, 66 S.Ct. 1050, 1054, 90 L.Ed. 1317 (1946) (distinguishing between state burdening of commerce and congressional authority to legislate). Nor would we find on the merits that appellant was denied the right to travel as seats were offered on both flights in non-emergency rows.

#### 2. Tort and contract claims

Appellant alleges USAir committed the tort of outrage, breached its contract of transportation, and by its policy and actions violated a common law "obligation ... to provide equal and courteous service to all." Complaint at 3; Supplemental Appendix for Appellee at 3.

The district court found that appellant had not alleged facts sufficient to show conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 comment d (1965). There is no basis for concluding that this finding was improper.

Anderson cites no specific contract term or condition as being in breach. USAir's Terms of Transportation permit removal of a passenger who attempts to interfere with a flight crew's duties or jeopardizes the safety or comfort of other passengers. Liability is limited to a ticket refund, which was duly given to appellant.

A state law obligation to give courteous service, even if applicable in the instant case, is expressly preempted by a 1978 amendment to the Federal Aviation Act, which in pertinent part states:

> [N]o State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services* of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C. app. § 1305(a)(1) (Supp. III 1985) (emphasis added) (amending 49 U.S.C. app. § 1305(a)(1) (1982) (substituting "air transportation" for "interstate air transportation")); *see also Hingson*, 743 F.2d at 1415–16 (claim based on state law entitling blind persons to full and equal access preempted by Aviation Act).

### C. *Claims of Judicial Error*

#### 1. Denial of motion for leave to amend the complaint

Appellant sought to amend his complaint after discovery was complete, and on the same day the parties filed cross-motions for summary judgment. The amended complaint added five new counts alleging slander and defamation, abuse of process or malicious prosecution, and negligent or fraudulent misrepresentation. It also deleted one count not here relevant. The district court acknowledged that leave to amend pursuant to Fed.R.Civ.P. 15 is ordinarily liberally granted, but held that here the "prejudice and expense would inure to defendant without a significant offsetting benefit." *Anderson*, 619 F.Supp. at 1198. We agree.

The discovery schedule had been agreed to by the parties and completed as planned to insure an expeditious resolution of the case. In addition, the slander, defamation, prosecution, and process counts were based on facts known prior to the completion of discovery. The one claim based on new facts—Anderson's allegation that USAir misrepresented its seating policy in a May 14, 1984 letter to a member of the National Federation of the Blind—was properly held to bear only tangential relation to the underlying incident. Under these circumstances, the district court cannot be found to have abused its discretion in denying plaintiff's motion. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (factors supporting denial of motion to amend include undue delay and undue prejudice to the opposing party) (dicta).

Furthermore, appellant, in attempting to assert a cause of action for false arrest, was not harmed by the denial. He remained free to file an independent action against the FAA police on that ground.

#### 2. Reference by the district court to 1985 air fatalities

Appellant alleges the district court erred in referring to 1985 as the worst year for air fatalities, arguing this is a fact not raised in the record, irrelevant to a correct decision, and without basis for a case filed in February 1985 and decided by September 1985. Brief for Appellant at 17–19. We find no error. The remark was prefatory to the decision, unessential to the court's findings, and arguably subject to judicial notice pursuant to Rule 201(b), (c), and (f) of the Federal Rules of Evidence.

### III. CONCLUSION

The gravamen of appellant's case is that the FAA has never formally determined that blind persons seated in an emergency overwing exit seat present a threat to safety. Only one study has allegedly been performed on the subject, and appellant asserts that it is wholly unreliable. Appellant thus concludes that USAir discriminated against him because of his handicap.

We never reach this question because we hold that appellant does not here present any cognizable statutory or constitutional claim. As there are no "disputes over facts that might affect the outcome of the suit under ... governing law," *Anderson v. Liberty Lobby, Inc.,* — U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), we find that the district court properly entered summary judgment for appellee USAir. At the same time, we express no opinion as to whether the policy pursued by USAir is subject to challenge by the FAA or DOT.

Accordingly, the judgment of the district court is

*Affirmed.*