[No. B044388. Second Dist., Div. Five. Feb. 27, 1991.]

ANTOINE ABOU-JAOUDE et al., Plaintiffs and Appellants, v. BRITISH AIRWAYS et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Knickerbocker & Reed and Richard L. Knickerbocker for Plaintiffs and Appellants.

Condon & Forsyth, Rod D. Margo and Kathleen T. Deeley for Defendants and Respondents.

## OPINION

ASHBY, Acting P. J.—Plaintiffs and appellants Marie Abou-Jaoude (Marie), Antoine Abou-Jaoude (Antoine) and Salwa Abou-Jaoude (Salwa) allegedly received rude or outrageous treatment at Los Angeles International Airport from defendant and respondent Karen Patterson (Patterson), a ticket agent of defendant and respondent British Airways. Appellants' first amended complaint asserted four causes of action seeking damages for this conduct. The trial court granted summary judgment in favor of respondents on all causes of action. (Code Civ. Proc., § 437c.) We reverse.

Since this case arises on summary judgment, we state the facts in the light most favorable to appellants as shown by the admissible evidence submitted in opposition to the summary judgment motion. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Appellants are of Lebanese origin. Marie is the 57-year-old mother of Antoine and Salwa. Marie has legal residency status in the United States; Salwa is legally residing in the United States awaiting citizenship approval; and Antoine is a citizen of the United States. On December 4, 1987, Marie was a ticketed passenger on a British Airways international flight from Los Angeles to Cyprus with a stopover in England. Antoine and Salwa were not passengers but they went to Los Angeles International Airport to assist their mother Marie to check in and board. Marie was weak and ill at that time and she did not speak English. Respondent Patterson was the authorized ticket agent at respondent British Airways' ticket office at the airport.

Because Marie had a stopover in England but did not speak English, Salwa especially desired to clarify the destination of Marie's luggage. Salwa asked Patterson to make sure that Marie's luggage would be received at her final destination, Cyprus. In a "very crude tone" Patterson answered Salwa, "I do not know. My job is not looking after her luggage. I just check her in." Salwa tried to explain to Patterson that it was critical to know the luggage's destination so that Salwa could explain to Marie before she boarded the aircraft what Marie should do after arriving in England. Patterson ignored Salwa completely.

Salwa told her brother Antoine about the problem she was having. Antoine asked Patterson about the luggage, and Patterson ignored him too. Having heard that a friend of Marie's had checked in earlier for the same

flight and destination and that the friend's luggage had been checked through to Cyprus, Antoine asked Patterson why Marie's luggage could not be treated the same way. Patterson replied, "Tough." Antoine asked to speak to a supervisor; Patterson ignored him. Antoine asked again to speak to a supervisor; Patterson shouted at him, "I don't want you to talk to the supervisor."

Antoine "persisted" that he wanted to talk to the supervisor. Patterson then "went out of control and in a hysterical manner" grabbed the telephone on the counter and screamed, "This is not your country. I am calling the Police." Patterson's screaming attracted the attention of other people at the airport, who came to the scene. Antoine said, "Go ahead, call the Police at least, with them, I could communicate." Instead of calling the police Patterson ran to a back office.

Marie was "in tears" throughout the incident. She boarded her flight and left the airport still not knowing what was going to happen to her luggage or what she was expected to do. Marie claimed an ulcer condition was aggravated by the incident. Antoine and Salwa claimed embarrassment and emotional injury.

Appellants' first amended complaint asserted four causes of action: (1) violation of a common carrier's statutory duty to treat all passengers with civility (Civ. Code, § 2103); (2) discrimination on the basis of ancestry or national origin in violation of the Unruh Civil Rights Act (Civ. Code, §§ 51, 52); (3) slander; and (4) intentional infliction of emotional distress.

Respondents' motion for summary judgment was granted on the grounds: (1) Civil Code sections 2103 and 51 are preempted by the Federal Aviation Act (49 U.S.C. appen. § 1305(a)(1)); (2) appellants have no cause of action for slander because the words attributed to Patterson are as a matter of law not defamatory and appellants did not suffer any special damages (Civ. Code, § 46); and (3) appellants have no cause of action for intentional infliction of emotional distress because Patterson's conduct was not outrageous and appellants did not suffer severe emotional distress.

We reverse, concluding that although Civil Code section 2103 is preempted by federal law, the Unruh Civil Rights Act, Civil Code section 51, is not preempted. In the nonpublished portion of this opinion we conclude appellants have raised triable issues of fact as to slander and intentional infliction of emotional distress.

# I

## FEDERAL PREEMPTION

### *The Statutes*

Civil Code section 2103, relating to duties of common carriers, provides, "A carrier of persons for reward must give to passengers all such accommodations as are usual and reasonable, and must treat them with civility, and give them a reasonable degree of attention."

The Unruh Civil Rights Act, Civil Code section 51, provides in pertinent part, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

The Federal Aviation Act preempts state laws relating to the services of air carriers as follows: "(1) . . . *no State* or political subdivision thereof and no interstate agency or other political agency of two or more States *shall enact or enforce any law*, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services of any air carrier* having authority under subchapter IV of this chapter to provide air transportation." (49 U.S.C. appen. § 1305(a)(1) (1988), italics added.)

### *Discussion*

Respondents contend that both Civil Code section 2103 and Civil Code section 51 are *expressly* preempted by the above provision of the Federal Aviation Act. We conclude that Civil Code section 2103 is expressly preempted by the federal act because section 2103 directly attempts to regulate the services of common carriers, including airlines. On the other hand, the Unruh Civil Rights Act, Civil Code section 51, is not expressly preempted by the federal act because section 51 applies generally to all business establishments and does not relate to the services of air carriers in particular.

The analysis by the Ninth Circuit in the recent case of *West* v. *Northwest Airlines, Inc.* (9th Cir. (1990)) 923 F.2d 657 is persuasive. There, a passenger who was "bumped" because of overbooking by the airline sued under state law for breach of the covenant of good faith and fair dealing. The Ninth Circuit rejected the airline's argument that such state-law cause of action was preempted by the Federal Aviation Act. The court held

Congress did not intend to expressly preempt *all* state statutes and common law rules which *affect* routes, rates or services involving air travel. The court stated, "Instead, we find that Section 1305(a)(l) preempts claims only when the underlying statute or regulation itself relates to airline services, regardless of whether the claim arises from a factual setting involving airline services. Thus, state laws that merely have an *effect* on airline services are not preempted." (*Id.* at p. 660, italics in original.) The court held "[I]n the instant case state law simply imposes a duty on *all* persons entering into contracts to act with good faith and fair dealing. The fact that this duty is applicable to airlines as well as the general public does not invoke federal preemption." (*Id.* at p. 660, italics added.)

Our analysis is further supported by *Air Transport Ass'n* v. *P.U.C. of State of Cal.* (9th Cir. 1987) 833 F.2d 200, 207. That case involved a regulation of the Public Utilities Commission which prohibited eavesdropping or recording of telephone conversations. The airlines wished to listen to phone conversations of their ticket reservation agents, ostensibly to supervise and improve ticket reservation service. They argued the Federal Aviation Act preempted the telephone regulation on the ground it related to airline services. The court stated in dictum that the regulation did not appear to be one relating to the services of an air carrier, commenting, "[t]he type of telephone operations utilized by the airlines is not peculiar to airlines, and is similar to those operations used by other national service industries where reservations are required, such as hotels and motels, and car rental companies." (*Ibid.*; see also *Federal Exp. Corp.* v. *California P.U.C.* (N.D.Cal. 1989) 716 F.Supp. 1299, 1302-1303 [regulations governing trucking industry not preempted as applied to air cargo carrier's shipments by truck].)

Applying this analysis here, we conclude Civil Code section 2103 is preempted but Civil Code section 51 is not.

### Civil Code Section 2103

■ Civil Code section 2103, requiring common carriers to treat all passengers with civility and a reasonable degree of attention, directly regulates the passenger-related services of common carriers, a narrow group of which airlines constitute a significant part.

Appellants contend that section 2103 does not regulate the services of air carriers but only the "manner" in which such services are provided. This fine distinction is not persuasive. Section 2103 expressly requires a certain degree of service. Congress intended that such explicit state regulation of air carrier services be expressly preempted, without inquiry in individual cases whether the degree of regulation actually interferes with federal law. In

*Anderson* v. *USAir, Inc.* (D.C. Cir. 1987) 818 F.2d 49, 57, the court specifically stated that a state-law obligation of a common carrier to give courteous service is expressly preempted by the federal act.

### Civil Code Section 51

The Unruh Civil Rights Act differs from the statutory duty of common carriers. Civil Code section 51 is a very broad law of general application. It does not relate specifically to travelers, it grants to "[a]ll persons within the jurisdiction of this state" the right to be free from certain arbitrary forms of discrimination. The statute imposes its obligations not specifically upon air carriers or common carriers but "all business establishments of every kind whatsoever." Since the Unruh Civil Rights Act is a general law which does not attempt to regulate air carriers, it is not expressly preempted by the Federal Aviation Act.

Respondents rely heavily upon *Hingson* v. *Pacific Southwest Airlines* (9th Cir. 1984) 743 F.2d 1408, 1415, but that case is distinguishable. There the airline had a policy that all blind passengers must sit in a bulkhead seat, i.e., the front row of the passenger section of the aircraft. A blind passenger who was denied seating in any other portion of the aircraft brought suit. One of the plaintiff's state-law causes of action was under California Civil Code section 54.1, subdivision (a), which expressly regulates access of blind and disabled persons to airlines as follows: "*Blind persons*, visually handicapped persons, deaf persons, and other physically disabled persons *shall be entitled to full and equal access*, as other members of the general public, *to accommodations, advantages, facilities, and privileges of all common carriers, airplanes*, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation, telephone facilities, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." (Italics added.)

Thus, Civil Code section 54.1, subdivision (a), relates specifically to air carrier services; Civil Code section 51 does not.

Moreover, the *Hingson* court noted that the Civil Aeronautics Board had adopted regulations specifically addressing discrimination against handicapped passengers and air carrier seating policies for handicapped passengers. (743 F.2d at p. 1415.)

On petition for rehearing respondents contend a specific provision of the Federal Aviation Act addresses discrimination in foreign air transportation

and that this provision preempts California Civil Code section 51, either because Congress intended to occupy the field or because enforcement of the state statute is an obstacle to the accomplishment of congressional objectives. (See generally *California* v. *ARC America Corp.* (1989) 490 U.S. 93, 101 [104 L.Ed.2d 86, 94, 109 S.Ct. 1661, 1665] [summarizing different ways federal preemption of state law can occur].)

Respondents point to section 404(b) of the Federal Aviation Act (49 U.S.C. appen. § 1374(b)) which provides, "No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Although aimed primarily at rate discrimination, this provision was held in *Fitzgerald* v. *Pan American World Airways* (2d Cir. 1956) 229 F.2d 499, 501-502, to create a private cause of action for racial discrimination involving airline passengers.

As part of the Airline Deregulation Act of 1978, this provision ceased to exist, effective January 1, 1983, as to "interstate air transportation" and "overseas air transportation." But it continues to exist as to "foreign air transportation," such as the flight involved in this case. (49 U.S.C. appen. §§ 1301(24), 1551(a)(2)(B); see *Hingson* v. *Pacific Southwest Airlines, supra,* 743 F.2d at p. 1411, fn. 1; *American Airlines Inc.* v. *Platinum World Travel* (D.Utah 1989) 717 F.Supp. 1454, 1459.)

Respondents' contention that Congress intended to fully occupy the field is not persuasive. In *Colorado Comm'n* v. *Continental* (1963) 372 U.S. 714 [10 L.Ed.2d 84, 83 S.Ct. 1022], an airline was found guilty under state antidiscrimination laws of rejecting a job applicant on the ground of race. The airline argued that Congress fully occupied the field by virtue of this provision of the Federal Aviation Act forbidding unjust discrimination. The Supreme Court rejected this argument, commenting, "This is a familiar type of regulation, aimed primarily at rate discrimination injurious to shippers, competitors, and localities. But we may assume for present purposes, that these provisions prohibit racial discrimination against passengers and other customers and that they protect job applicants or employees from discrimination on account of race. . . . [W]e are satisfied that Congress in the Civil Aeronautics Act of 1938 and its successor had no express or implied intent to bar state legislation in this field and that the Colorado statute, at least so long as any power the Civil Aeronautics Board may have

remains 'dormant and unexercised,' will not frustrate any part of the purpose of the federal legislation." (*Id.* at pp. 723-724, fns. omitted [10 L.Ed.2d at pp. 90-91].) Although the state statute was identical in purpose to the federal statute, it was upheld because the purpose of the federal statute would not be frustrated by the state statute. (*Id.* at p. 722 [10 L.Ed.2d at p. 90].)

Here, even assuming that appellants could have pleaded a private cause of action under the Federal Aviation Act, the federal purpose would not be frustrated by enforcement of appellants' cause of action under the Unruh Civil Rights Act, Civil Code section 51.

We conclude the Federal Aviation Act does not preempt the Unruh Civil Rights Act protecting all persons, including airline passengers, against discrimination on grounds of sex, race, color, religion, ancestry or national origin. (See also *Isbister* v. *Boys' Club of Santa Cruz, Inc.* (1985) 40 Cal.3d 72, 90, fn. 21 [219 Cal.Rptr. 150, 707 P.2d 212] [congressional approval of Boys' Club charter does not preempt sex discrimination claim under Unruh Civil Rights Act].)

II, III*

. . . . . . . . . . . . . . . . . . . .

IV

The judgment is reversed. Costs on appeal are awarded to appellants.

Boren, J., and Lucas, J.,† concurred.

A petition for a rehearing was denied March 26, 1991.

---

* See footnote, *ante*, page 1137.
† Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.