**FEDERAL EXPRESS CORP., Plaintiff,**

v.

**CALIFORNIA PUBLIC UTILITIES COMMISSION, et al., Defendants.**

**No. C–87–4891 MHP.**

United States District Court, N.D. California.

March 30, 1989.

Eliot Jubelirer, Marvin D. Morgenstein and Jonathan M. Perezous, Morgenstein & Jubelirer, San Francisco, Cal., for plaintiff.

James Quinn, Janice Kerr and J. Calvin Simpson, California Public Utilities Com'n, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiff, which provides a nationwide small package express delivery service, brought this action seeking a declaration that California Public Utilities Code §§ 486–496 are unconstitutional as an impermissible burden on interstate commerce under the Commerce Clause and as preempted by the Airline Deregulation Act ("the Act"), 49 U.S.C.App. § 1305. Plaintiff also seeks an injunction preventing defendants from enforcing regulations promulgated pursuant to state statutory authority. The case is now before the court on cross-motions for summary judgment. Having considered the submissions of the parties, for the following reasons, the court grants defendants' motion for summary judgment on the preemption issue only. The court denies both motions for summary judgment on the burden on interstate commerce issue and orders the parties to submit supplemental pleadings on that issue.

## BACKGROUND

Federal Express operates an interstate package air delivery system nationwide under a grant of authority pursuant to the Federal Aviation Act, 49 U.S.C.App. § 1371. Plaintiff charges all customers throughout the country the same rates for service. Plaintiff claims that it does not offer an intrastate delivery service in California that is separate from its nationwide service. Plaintiff concedes, however, that 3.5% of its total volume represents business that both originates in and is destined for locations within California. According to plaintiff, packages originating and destined for California may be transported through three different sorting routes: 1) by air to Memphis; 2) by air to Los Angeles or Oakland; or 3) by truck to Los Angeles or Oakland when air transportation is not available due to lack of capacity or adverse weather conditions. If the packages are sent to Memphis, they are then flown back to California. With each method, the packages are transported to their final destinations in California by small trucks.

Defendants California Public Utilities Commission (hereinafter "CPUC") and its various officials regulate the portion of plaintiff's business which is conducted purely intrastate and solely by truck. Since 1984, Federal Express has sought and received two types of authority from the CPUC: a California Highway Common Carrier Certificate, which is registered to a subsidiary, and a California Highway Con-

tract Carrier Permit. Plaintiff also conducts intrastate business pursuant to a rate tariff filed with the CPUC which became effective February 1, 1985. According to the CPUC, Federal Express' subsidiary paid quarterly transportation rate fund fees to the CPUC from 1984, after obtaining intrastate motor carrier authority, until some point in 1987.

In 1986, the CPUC learned of a Tennessee lawsuit in which plaintiff's vice president H. Doyle Cloud testified that Federal Express was operating in California without paying authorization ground transportation rates because it believed that the regulations did not apply to it as an interstate carrier. By letter of November 20, 1986, addressed to plaintiff's chief executive officer, the CPUC staff initiated an informal investigation of plaintiff's failure to comply with state licensing regulations. This informal investigation culminated in June 1987 with a formal staff letter identifying two areas of noncompliance and requiring complete correction by November 1, 1987, to avoid formal enforcement action. Although plaintiff failed to comply with this demand, the CPUC never initiated formal enforcement proceedings.

Plaintiff also failed to comply with certain regulatory reporting requirements. The CPUC responded by imposing fines and threatening other penalties.

Plaintiff filed this action for declaratory and injunctive relief on December 9, 1987. On May 17, 1988, the court denied defendants' motion to dismiss the complaint. Defendants have submitted papers showing that the CPUC has agreed not to pursue any related action against Federal Express regarding the payment of fees or the filing of reports during the pendency of this lawsuit.

## EVIDENTIARY MOTIONS

Plaintiff has made five motions to strike various portions of defendants' submissions. The court rules as follows:

1) The motion to strike pages 26 through 35 of defendants' memorandum of points and authorities is DENIED, since that submission was within the limits previously set by this court.

2) The motion to strike the portion of the Quinn declaration and article regarding Federal Express' advocacy of a nationwide campaign to preempt state motor carrier jurisdiction is GRANTED, since such evidence is irrelevant to this action.

3) The motion to strike references to United Parcel Service and Purolator Courier is GRANTED, since those references are inadmissible hearsay.

4) The motion to strike the opinion offered by CPUC official Donald H. Smith about tracking intrastate ground movements is GRANTED, since that opinion lacks foundation and Mr. Smith has not been qualified as an expert witness.

5) The motion to strike a legal memorandum which was cited in and attached to a letter sent by the CPUC to Federal Express in February 1987 is DENIED, insofar as that memorandum is admitted only for the purpose of showing how the CPUC informed plaintiff of its enforcement operations and not for the content of the legal opinion.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

■ The court's function, however, is not to make credibility determinations. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

## DISCUSSION

Federal Express contends that the application of CPUC regulations to its intrastate ground operations is unconstitutional on two grounds: 1) such regulations are preempted by the Airline Deregulation Act, 49 U.S.C.App. § 1305, under the Supremacy Clause (Art. VI, cl. 2) of the U.S. Constitution; and 2) such regulations place an unconstitutional burden on interstate commerce, under the Commerce Clause (Art. I, Sec. 8, cl. 3). Defendants seek summary judgment on both grounds.

## I. PREEMPTION

■ Plaintiff Federal Express argues that the CPUC regulations are barred by 1) express preemption, 2) implied preemption where Congress intended to occupy the field, and 3) conflict preemption where state law clashes with Congress' objectives, even if Congress did not intend to occupy the field. *See, e.g., Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 714–715, 105 S.Ct. 2371, 2375–2376, 85 L.Ed.2d 714 (1985) (summarizing preemption case law). Where state regulatory powers are challenged, courts must presume that state laws are not preempted unless preemption is shown to be the clear purpose of the Congress. *See, e.g., Pacific Legal Foundation v. State Energy Resources Conservation and Dev. Comm'n*, 659 F.2d 903, 919 (9th Cir.1981), *aff'd*, 461 U.S. 190, 206, 103 S.Ct. 1713, 1723, 75 L.Ed.2d 752 (1983) (courts assume that states' police powers take precedence unless Congress clearly demonstrated contrary intent). The burden of proof therefore falls on those arguing that state laws are preempted, so plaintiff must bear that burden.

### A. *Express Preemption*

Plaintiff contends that 49 U.S.C.App. § 1305(a) expressly prohibits the CPUC regulation of Federal Express. This section states:

> Except as provided in paragraph (2) of this subsection, no State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

Whether this section preempts CPUC regulation of intrastate ground transport turns on the meaning of two phrases: "relating to" and "rates, routes, and services." Federal Express asserts that its ground-based routes are *services* within its integrated air-ground transportation system. Invoking the plain meaning rule of statutory construction, defendants counter that the intrastate trucking operation of Federal Express is not covered by the language of section 1305(a).

In a similar case, the Ninth Circuit rejected an expansive reading of the term "services." *Air Transport Ass'n v. Public Utilities Comm'n of California*, 833 F.2d 200, 207 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988) (section 1305(a) does not preempt CPUC regulation prohibiting recording of telephone conversations without warning). The Ninth Circuit reasoned that:

> The type of telephone operations utilized by the airlines is not peculiar to airlines, and is similar to those operations used by other national service industries where reservations are required, such as hotels and motels, and car rental companies.

*Id.* Thus, telephone reservation operations are not services within the meaning of section 1305(a). *Id. Compare, e.g., Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1415 (9th Cir.1984) (air carrier seating policies for handicapped passengers held to be "services" and therefore preempted by section 1305(a)).

■ Plaintiff has failed to satisfy the *Air Transport Association* test since it

has not shown that Federal Express intrastate trucking operations are singularly *airline* services. Although Federal Express' ground operations are commercially linked to its air transportation system, its hauling operations are not substantially different from services provided by other motor carriers.

Plaintiff also argues that the ground transportation services "relate to" the air transportation provided by Federal Express, analogizing to the Supreme Court's broad interpretation of ERISA preemption of any state laws which "relate to" any employee benefit plan. 29 U.S.C. § 1144(a). *See, e.g., Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–1553, 95 L.Ed.2d 39 (1987). However, this reading of ERISA preemption should not be taken as a canon of general statutory interpretation. The legislative history of ERISA indicates that Congress specifically intended a broad reading of preemption in that context. *Pilot Life,* 481 U.S. at 45–46, 107 S.Ct. at 1551–1552 (citations omitted). Plaintiff cites no comparable legislative history concerning section 1305(a). It is true, however, that the legislative framework of section 1305(a), the Airline Deregulation Act of 1978, was aimed at creating "comprehensive legislation" to supply "a gradual and phased transition to a deregulated system." *Hughes Air Corp. v. Public Utilities Comm'n,* 644 F.2d 1334, 1337 (9th Cir. 1981) (citation omitted).

Even assuming *arguendo* that the phrase "relating to" should be read expansively, plaintiff's position is problematic. The court has found no cases in which the phrase "relating to" in this section has been applied to regularly conducted ground transportation.[1] *Compare, e.g., Anderson v. USAir, Inc.,* 818 F.2d 49, 57 (D.C.Cir. 1987) (state law requirement of courteous service on airplane preempted by section 1305(a)). Under the interpretation urged by Federal Express, virtually any air carrier-owned or operated service would escape state regulation if it established the slightest nexus between its various activities.[2] The court declines to strain such a reading from section 1305(a).

## B. *Implied Preemption*

■ In order to show that the Airline Deregulation Act of 1978 impliedly preempts CPUC regulations, plaintiff must offer "evidence of a congressional intent to pre-empt the specific field covered by the state law." *Wardair Canada, Inc. v. Florida Dept. of Revenue,* 477 U.S. 1, 6, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1 (1986) (state sales taxation of airline fuel not preempted by Federal Aviation Act). The Act expressed the legislative intent that the aviation industry be permitted to develop and grow competitively in response to market forces. 49 U.S.C.App. § 1302(b). Plaintiff cites the following language from the policy declaration preceding the Act:

(1) The encouragement and development of an expedited all-cargo air service system, provided by private enterprise, response to (A) the present and future needs of shippers, (B) the commerce of the United States, and (C) the national defense.

(2) The encouragement and development of an integrated transportation system relying upon competitive market forces to determine the extent, variety, quality and price of such services.

---

1. Federal Express also relies on regulations issued by the Civil Aeronautics Board (now enforced by the Department of Transportation) to support its argument that section 1305(a) preempts a broad range of air carrier activities. Nothing in those regulations suggests that ground transportation is covered. In particular, to read the exemption for "mode of operations" in 14 C.F.R. § 399.110(d) as including Federal Express trucks distorts the regulatory language.

2. At the hearing, plaintiff's counsel admitted that he could not draw the line at which a

business with both air and ground transportation services would qualify within the interpretation of "all-cargo system" urged by Federal Express. In response to the court's questioning, plaintiff's counsel sought to distinguish Federal Express from a hypothetical business certified as an air carrier where over 50% of its revenues derived from ground transportation. Yet plaintiff's counsel declined to specify the point at which such business would become an "integrated transportation system" in the parlance of Federal Express.

49 U.S.C.App. § 1302(b). Plaintiff urges the court to find that by using phrases such as "all-cargo air service system" and "integrated transportation system," Congress intended to include Federal Express' ground transportation activities.

Neither the definitional framework of the Act nor its legislative history supports such an argument. An "all-cargo air service system" is defined in the statute simply as "the carriage by aircraft in interstate or overseas air transportation of only property or mail, or both." 49 U.S.C.App. § 1301(11). As to the notion of an integrated transportation system, the only language that might pertain to ground transportation is found in the definitions of "interstate air transportation" and "interstate air commerce" which include the movement of commerce in part by aircraft and in part by "other forms of transportation." *Id.* § 1301(23) & (24). Here, however, the CPUC is not attempting to regulate shipments of Federal Express in which intrastate ground transportation is combined with air transport. Rather, it is attempting to regulate shipments which involve only the intrastate ground transportation. Hence, these statutory definitions are not implicated.

In the many pages of Congressional reports accompanying the Airline Deregulation Act, no mention is made of ground transportation activities, while repeated references are made to air transportation and flights. *See, e.g.,* H.Rep. No. 95–1211, 95th Cong., 2nd Sess. 15–16, *reprinted in* 1978 U.S.Code Cong. & Admin.News 3737, 3751–3752 (discussing preemption); H.Conf.Rep. No. 95–1779, 95th Cong., 2nd Sess. 94–95, *reprinted in* 1978 U.S.Code Cong. & Admin.News 3773, 3804–3805 (discussing preemption).

Proponents of the Airline Deregulation Act of 1978 declared that Congress intended to prevent the states from regulating air transportation. *See Hughes Air Corp.,* 644 F.2d at 1336–1337 (discussing legislative history of Airline Deregulation Act). In 1984, Congress expanded the reach of the Act by amending the preemption clause to replace the words "interstate air transportation" with "air transportation." *See* 49 U.S.C.App. § 1305(a)(1) (Supp. III 1985) (amending 49 U.S.C.App. § 1305(a)(1)).

Furthermore, other post–1978 legislation indicates that Congress did not intend the federal government to occupy the field of intrastate ground transportation. Numerous amendments to the Interstate Commerce Act, 49 U.S.C. § 10101 et seq., including the Motor Carrier Act of 1980, Pub.L. 96–296, 94 Stat. 793, and the Bus Regulatory Reform Act of 1982, Pub.L. 97–261, 96 Stat. 1102, have allowed regulation of intrastate motor travel to remain in the hands of the states. The Airline Deregulation Act explicitly provides that, with narrow exceptions, the "power of a State to regulate intrastate transportation provided by a motor carrier" is not diminished by the grant of jurisdiction to the Interstate Commerce Commission ("ICC") to regulate interstate motor transportation. 49 U.S.C. § 10521(b)(1).[3]

Plaintiff has presented no evidence to demonstrate that Congress viewed Federal Express as an "integrated air-ground system" whose operations should be considered under the single rubric of air carrier. While such legislative understanding may be short-sighted, correction must be sought from Congress, not the courts.

### C. *Conflict Preemption*

 Finally, plaintiff argues that the CPUC's regulation of Federal Express' in-

---

3. *Interstate Commerce Comm'n v. Texas,* 479 U.S. 450, 107 S.Ct. 787, 93 L.Ed.2d 809 (1987), cited by plaintiffs, is easily distinguishable from the case at bar. There the Supreme Court held that the Interstate Commerce Commission (hereinafter "ICC") had authority to exempt from state regulation the motor freight portion of an intrastate "intermodal" movement of goods (an intermodal movement allows a carrier to transport a trailer and its goods over rail on a flatcar and then to haul the trailer on the highway). 479 U.S. at 460–461, 107 S.Ct. at 793 (interpreting 49 U.S.C. § 10505(f)). The parties had not disputed that the same provision gave the ICC authority to exempt the rail freight part of the journey from state regulation. *Id.* at 452, 107 S.Ct. at 789.

Here the CPUC is not seeking to regulate "intermodal" transportation. Additionally, plaintiff does not rely on an exemption order authorized by the regulatory authority of a federal agency.

trastate activities conflicts with the objectives and goals of the Act. The court must construe the Airline Deregulation Act to avoid conflict with other legislation in the transportation field. *Cf. Louisiana Public Service Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 370, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986) (reconciling different jurisdictional provisions and finding that Congress created dual regulatory system for telephone service). One key to Congressional thinking on this matter is the Interstate Commerce Act, which deprives the Interstate Commerce Commission of jurisdiction over certain motor carriers when air transport is also involved. For example, where transportation of property by motor carrier is part of a continuous movement involving air transportation, the ICC does not have jurisdiction. 49 U.S.C. § 10526(a)(8)(B). However, the exemption does not extend to motor carrier service of an air carrier. It is limited to those goods actually transported by joint air and ground carriage. Another example found in the same section is the exemption of motor carrier transportation when used as a substitute for air transportation in emergency situations. *Id.* § 10526(a)(8)(C).

These exemptions suggest that Congress viewed ground and air transportation as belonging to two different regulatory regimes under normal circumstances. The Interstate Commerce Act further demonstrates that Congress intended to specify when motor carrier transportation was to be seen as an adjunct to air transportation and therefore exempt from the ICC's jurisdiction. *See, e.g.,* 49 U.S.C. § 10526(a)(8)(A) (removing from ICC jurisdiction "transportation of passengers by motor vehicle incidental to transportation by aircraft").

For the reasons articulated above, the court finds that under the Interstate Commerce Act, Congress contemplated a multilayer system of transportation regulation. The court therefore finds that CPUC regulations do not conflict with federal legislation in the transportation field.

## II. BURDEN ON INTERSTATE COMMERCE

Plaintiff also contends that the CPUC regulations are an unconstitutional burden on interstate commerce, prohibited by the Commerce Clause (Art. I, § 8, cl. 3). The legal test for determining the validity of state statutes that affect interstate commerce is set forth in *Pike v. Bruce Church Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970):

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Id.* at 142, 90 S.Ct. at 847; *see also Burlington Northern R.R. Co. v. Dep't of Public Service Regulation,* 763 F.2d 1106, 1114 (9th Cir.1985) (challenger to state regulation must show that it "impedes substantially the free flow of commerce from state to state").

Federal Express contends that enforcement of the CPUC regulations will place an unreasonable burden on interstate commerce because the regulations will increase operating costs, result in delays in delivery times and reduce operating, pricing and discount flexibility. The CPUC counters that Federal Express' scenario of burdens is unfounded and that CPUC regulation of Federal Express would be reasonable and tailored to Federal Express' existing method of operation.

Much of Federal Express' Commerce Clause analysis is premised on its contention that it cannot determine at the time of package pick-up whether a package from a location in California will move solely by ground transportation or partially by air. Federal Express contends that this inability

**1306**

to separate packages before shipment will require Federal Express to comply with the CPUC regulations for all California shipments, even those which will not be delivered solely by intrastate ground carrier.

As the parties have not fully explored the burden on interstate commerce which would result from a post-shipment estimate of the packages which have traveled solely by truck in California, the court declines to grant summary judgment. The court directs the parties to conduct additional discovery, if warranted, and file supplemental pleadings addressing the factual issues raised by the court.

Specifically, the parties are directed to address whether or not Federal Express can identify, *after* packages have been shipped, those packages that have traveled solely by truck in California. Federal Express concedes that such post-shipment scanning is conceivable. *See* Lawrence Decl. at para. 8. Counsel for the CPUC, in oral argument on September 26, 1988, stated that the CPUC will accept estimates of the number of packages shipped by Federal Express solely by ground transportation in California in order to assess quarterly transporation rate fund fees. *See also* Smith Dec. at para. 8.

Whether the CPUC regulations would pose an unreasonable burden on interstate commerce under such an estimate system has been not been addressed by the parties. Consequently, the parties are hereby directed to address whether the CPUC regulations would pose an unreasonable burden on interstate commerce if Federal Express were required to estimate the number of packages which have traveled solely in intrastate commerce. In addition, the CPUC is directed to address in greater detail the public benefits to be realized from the CPUC regulations challenged herein.

Plaintiff and defendant are hereby ordered to file declarations or other evidentiary submissions addressing the issues discussed above. In relation to those issues the parties may file supplemental memoranda of no more than ten (10) pages in length. These papers shall be filed within sixty (60) days of the date of this order. No replies shall be filed.

CONCLUSION

Plaintiffs have failed to carry their burden of proof with regard to the preemption argument. On the other hand, defendants have shown that the CPUC regulations were not barred by the Supremacy Clause. Defendants are hereby granted partial summary judgment on the issue of preemption. The parties' motions for summary judgment on the burden on interstate commerce issue are denied, and the parties are directed to file supplementary pleadings in accordance with this order.

IT IS SO ORDERED.