FRONTIER AIRLINES, INC., a Nevada corporation, Plaintiff,

v.

UNITED AIR LINES, INC., a Delaware corporation; and Frank R. Kent, Defendants.

Civ. A. No. 89–F–645.

United States District Court, D. Colorado.

Aug. 14, 1989.

**1402**

H. Thomas Coghill, David J. Richman, Dean S. Neuwirth, Coghill & Goodspeed, P.C., Denver, Colo., for plaintiff.

Dale R. Harris, Timothy M. Tymkovich, Lisa S. Kahn, Davis, Graham & Stubbs, Denver, Colo., Carolyn F. Corwin, Covington & Burling, Washington, D.C., for defendant United Air Lines, Inc.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR REMAND AND DISMISSAL

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the court on two motions:

(1) plaintiff's motion to remand, filed May 15, 1989, and (2) defendants' motion to dismiss claims against Frank R. Kent, filed June 1, 1989. Plaintiff commenced this action in state court March 15, 1989. Plaintiff brings claims for violation of Colorado antitrust and unfair competition statutes, for tortious interference with contracts and prospective contractual relations and for breach of contract. The litigation arises out of the operation of a computer reservation system for airline transportation owned by defendant United Airlines ("United"). Defendant Frank R. Kent is the Regional Sales Manager for United, based in Denver, Colorado. United and Kent removed the action to this court on April 14, 1989, alleging that Kent had been joined as a defendant for the sole purpose of defeating diversity jurisdiction in the federal court. We find that complete diversity of citizenship exists between plaintiff and the proper defendant in this litigation. Plaintiff has failed to state claims upon which relief could be granted against defendant Kent. Accordingly, plaintiff's motion to remand is DENIED. Defendants' motion to dismiss claims against defendant Frank R. Kent is GRANTED.

### I.

The relevant portion of the removal statute provides that any civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendants to federal court in the district in which the state action is pending. 28 U.S.C. § 1441(a). Where an action is not premised upon federal law, the "action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

United is a Delaware corporation with its principal place of business is Illinois. Frontier Airlines ("Frontier") is a Nevada corporation with its principal place of business in Colorado; plaintiff is a resident of Colorado for determining diversity of citizenship. 28 U.S.C. § 1332(c).[1] Defendant Kent is also a citizen of Colorado.

 The joinder of a resident defendant against whom no cause of action is pled, or against whom there is in fact no cause of action, will not defeat removal. *Roe v. General Am. Life Ins. Co.*, 712 F.2d 450, 452 n. * (10th Cir.1983); *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964). Thus, the central issue before the court is whether plaintiff has stated a cause of action against Kent, the sole non-diverse defendant in this action.

United operates a computerized reservation system ("CRS") named Apollo. Plaintiff alleges that Kent was responsible for marketing United's transportation and CRS services to travel agents in Denver, Colorado and the Rocky Mountain region during a period leading up to August, 1986. By expanding its internal reservation computer and providing telephonic terminal access, United, like other major airline companies, developed a product which could be marketed to travel agents and to other airlines. As the system developed, Frontier and other airlines executed agreements with United whereby their flights were listed on Apollo in a manner that allows travel agents to book reservations and print tickets for passengers through agency computer terminals. Travel agents executed subscription and lease contracts with United for placement of CRS terminals in their agencies. Travel agents as well as listed airlines are charged fees for their use of the system. Frontier alleges that through a variety of practices articulated in the complaint, United undertook an ongoing scheme to divert passengers from Frontier to United in relation to transportation through Denver, a "hub" for flights on both airlines.[2]

Plaintiff alleges that various features of Apollo and the manner in which United marketed CRS services to travel agents amounted to anticompetitive or monopolistic conduct, breached United's contracts with Frontier, and tortiously interfered with contracts between Frontier and various travel agents. Frontier brings eight claims for relief against both defendants, which it categorizes in four groups: (1) common law breach of contract, (2) violations of the Colorado Antitrust statute, Colo.Rev.Stat. § 6–4–101, *et seq.*, (3) violations of the Colorado Unfair Practices Act, Colo.Rev.Stat. § 6–2–101, *et seq.*, and (4) common law tortious interference with contracts and prospective contractual relations.

## II.

The parties dispute the applicable standards and scope of our review applicable to a motion to remand a case removed on the grounds of fraudulent joinder.

### A. *Fraudulent Joinder.*

 Citizenship of a non-diverse defendant who is a proper party, even though not an indispensable party, must be considered when determining the existence of diversity jurisdiction. *Dailey v. Elicker*, 447 F.Supp. 436, 438 (D.Colo.1978). If the plaintiff fails to state a cause of action against a the resident defendant who defeats diversity, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987); *Roe v. General Am. Life Ins. Co.*, 712 F.2d 450, 452 n. * (10th Cir.1983); *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964); *Dailey*, 447 F.Supp. at 438.

1. Frontier suspended flight operations August 24, 1986 upon filing a petition for bankruptcy in the District of Colorado. Frontier alleges that the conduct described in its complaint was a substantial and contributing cause leading to its bankruptcy.

2. For detailed discussion of the development of CRS systems and practices, and federal regulation designed to address the conduct alleged in the complaint, *see In re Air Passenger CRS Antitrust Litigation*, 694 F.Supp. 1443 (C.D.Cal.1988).

In order to prove fraudulent joinder, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court; or that there has been outright fraud in plaintiff's representations as to jurisdictional facts. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981); *Monroe v. Consolidated Freightways, Inc.*, 654 F.Supp. 661, 662–63 (E.D.Mo.1987). If there is even a possibility that the state court would find that the complaint states a cause of action against the resident defendant, the federal court must find that the joinder was proper and remand the case to state court. *Coker*, 709 F.2d at 1440–41; *Dailey v. Elicker*, 447 F.Supp. 436, 438 (D.Colo.1978). Where a defendant does not allege fraud in the pleading of jurisdictional facts, the sole issue before the court is whether plaintiff has stated a basis for recovery against resident defendants under state law. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir.1983); *Monroe*, 654 F.Supp. at 662–63; *Dailey*, 447 F.Supp. at 438.

■■■ Defendants contend that the court may also disregard nominal resident defendants where complete relief may be afforded against non-resident defendants and disregard nominal resident defendants. *See Rose v. Giamatti*, 721 F.Supp. 906 (S.D. Ohio 1989). While we agree that in cases like *Rose*, where the relief sought is purely injunctive, this approach provides an avenue for determining whether joinder is fraudulent, the approach is not applicable to the matter at hand. Where a plaintiff seeks monetary damages against defendants alleged to be jointly and severally liable, the court may not disregard properly joined defendants simply because a non-resident defendant has the capital reserves to satisfy an entire judgment. The question before the court is whether plaintiff has a possibility of proving liability on the part of the resident defendant.

B. *Scope of Review*

■■■ Plaintiff correctly contends that the court may not "pre-try" claims to determine whether there is a possibility of recovery against the resident defendant. *Smoot v. Chicago, Rock Island and Pacific RR. Co.*, 378 F.2d 879, 882 (10th Cir.1967); *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964) (citations omitted); *Dailey v. Elicker*, 447 F.Supp. 436, 438 (D.Colo.1978). The court is not precluded from reviewing the factual submissions of the parties to make findings where an issue is subject to summary determination, however. *Smoot*, 378 F.2d at 882.

■■■ Defendant bears the burden of proving fraudulent joinder. *Getty Oil Div. of Texaco v. Ins Co. of North America*, 841 F.2d 1254, 1259 (5th Cir.1988); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983). The burden on defendant is high; its presentation must be one that "compels the conclusion that the joinder is without right and made in bad faith...." *Chesapeake & Ohio Ry. Co. v. Cockrell* 232 U.S. 146, 152, 34 S.Ct. 278, 280, 58 L.Ed. 544 (1914); *see also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921) ("[Defendant's] showing must consist of a statement of facts rightly leading to the conclusion [that joinder is fraudulent] apart from the pleader's conclusions.")

■■■ To meet this burden, a defendant seeking removal is entitled to present facts to show fraudulent joinder. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987). While issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal. *Smoot v. Chicago, Rock Island and Pacific RR. Co.*, 378 F.2d 879, 882 (10th Cir.1967) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921)). As with any jurisdictional question, the court may determine the basis of joinder by any means available. *Dodd v. Fawcett Publi-*

*cations, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted).

Both parties may submit affidavits and/or deposition transcripts on a motion to remand. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983). To give rise to a possibility of recovery against the resident defendant, plaintiff need only present affidavits or other evidence controverting facts in defendant's submissions. *Monroe v. Consolidated Freightways, Inc.*, 654 F.Supp. 661, 662–63 (E.D.Mo. 1987). The court must resolve all disputes of fact or uncertain legal issues in favor of the plaintiff. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983); *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964) *Monroe*, 654 F.Supp. at 662–63. While the responsive burden on plaintiff may require it to present factual materials to support its complaint, the burden on plaintiff is not as high as that imposed in resisting summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We are of the view that plaintiff can defeat removal and controvert defendants' factual submissions merely by presenting the results of its prefiling investigation of the claims alleged. *See West America Corp. v. Vaughan–Bassett Furniture*, 765 F.2d 932, 937 (9th Cir. 1985); *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964); *Brown v. Southland Corp.*, 620 F.Supp. 1495, 1497 (D.C.Mo.1985); *cf.* Colo. R.Civ.P. 11 (signature affirms reasonable inquiry).

### III.

Frontier contends its complaint is concerned with the regional competition between Frontier and United in United's mountain region. Kent is the Regional Sales Manager for United, based in Denver, Colorado. He is responsible for United sales and marketing to travel agents in the region. Frontier describes its complaint as being based on a two-part, mutually dependent theory. First, Frontier intends to prove that *United's* operation and maintenance of the Apollo CRS was improper and anticompetitive during the relevant time period.[3] Second, Frontier intends to prove that Kent's own marketing efforts and the marketing efforts of employees under his control were improper and anticompetitive and were a necessary cause of the injuries alleged. The complaint lists specific marketing efforts in two categories: (1) use of allegedly restrictive contract provisions in equipment lease agreements executed by travel agents to preserve and augment Apollo's allegedly dominant position in the relevant market,[4] and (2) use of commission incentive programs, threats of retaliatory measures and restrictive lease agreements and practices for the purpose of obtaining and maintaining travel agent use of Apollo over any competing CRS. Plaintiff alleges that these practices furthered other marketing efforts directed to Apollo automated travel agencies to steer customers away from Frontier to United. Finally, plaintiff alleges passengers diverted from Frontier in this manner were then enticed to remain with United through promotions like United's "Mileage Plus" frequent flyer program.

As discussed above, the question before the court is whether on these allegations plaintiff has a possibility of proving liability on the part of the resident defendant, Kent.

### A. *Contract Claims.*

In its fourth claim for relief, Frontier alleges (1) it entered into contracts with United for the neutral, objective, and fair display of Frontier flight information on Apollo, and (2) the design and operation

---

**3.** The complaint discusses negotiations between Frontier and United commencing in 1980, contracts between the two companies in 1982 and 1985, and certain actions taken by United over the life of the CRS system ending with Frontier's bankruptcy in 1986.

**4.** The complaint focuses on travel agencies located in and around Denver and in several cities served by both airlines through their Denver hubs.

of Apollo, aided and abetted by the efforts of Kent to create and preserve Apollo's dominance in the relevant market breached the contracts. *See* Complaint, ¶¶ 49–51. In its third claim, Frontier seeks a declaration that its contracts with United are void as a matter of public policy pursuant to Colo.Rev.Stat. § 6–4–106. Kent's affidavit on his lack of involvement in the negotiation, execution, or implementation of United's contracts with other airlines is unrefuted. *See* Kent Affidavit of April 14, 1989, ¶¶ 3–5. Plaintiff contends that it is entitled to recover from Kent for breach of contract on the theory that he implemented the operation of the Apollo system in the marketplace knowing its operation would violate the terms of the contract. Defendants offer no authority to support the proposition that a non-signing agent of a contracting party could be personally liable along with the signing principal for breach of contract. It is hornbook law that a contract can be enforced only against a party to a contract. *Mitten v. Weston,* 44 Colo.App. 274, 615 P.2d 60, 16 (1980); *see also Cruickshank & Co., Ltd. v. Sorros,* 765 F.2d 20, 26 (2d Cir.1985) (individual not a party to the contract cannot be held liable for its breach notwithstanding his position as agent of party in breach). Defendant has demonstrated that plaintiff has no possibility of recovering from defendant Kent for breach of airline CRS contracts executed by United. Similarly, since defendant Kent could not be held personally liable on contracts between United and Frontier, plaintiff has stated no cause of action against defendant Kent for a declaration that these contracts are void as contracts in restraint of trade. *See* Colo.Rev.Stat. § 6–4–106.[5]

**B. *Antitrust and Unfair Competition Claims.***

 Defendants contend that plaintiff may not recover from Kent on its first, second, third, fifth and sixth claims, for violations of Colorado's antitrust and unfair competition statutes, because federal law preempts the application of state trade regulation law to the CRS industry. Defendants contend that preemption gives rise to an alternate theory of removal under the artful pleading exception to the well-pleaded complaint rule. The artful pleading exception prevents a plaintiff from avoiding federal question removal by framing claims in terms of state law when the complaint is truly federal in nature. *See Local No. 57 v. Bechtel Power Corp.,* 834 F.2d 884, 886–40 (10th Cir.1987), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988); *Maierhofer v. Crown Realty Co.,* Civ.A. No. 89–F–330, slip op. at 3–4 (D.Colo. April 11, 1989) (Finesilver, J.). Plaintiff responds to the artful pleading exception controls our analysis and requires the court to abstain from reviewing the preemption defense. We disagree.

**1. *Preemption As A Means of Proving Fraudulent Joinder.***

 The well-pleaded complaint rule and its artful pleading exception form a body of law construing provisions of the statute providing for removal of cases "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1441(a), (b); *see Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1982); *Federated Department Stores v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *Maierhofer v. Crown Realty Co.,* Civ.A. No. 89–F–330, slip op. at 3–4 (D.Colo. April 11, 1989). Under that body of law, a case must fall within a narrow list of exceptions before a court will review defenses based in federal law, like preemption, to determine whether claims actually arise under federal law. *Maierhofer,* slip op. at 4–5. Outside those exceptions, preemption is in the nature of a defense which is appropriately plead in state court. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2432, 96 L.Ed.2d 318 (1987); *Madsen v. Prudential Federal Savings &*

---

**5.** As discussed below, we also find that the statute as applied in this matter is preempted by federal law.

*Loan Ass'n,* 635 F.2d 797, 801–02 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

Rather than being removed on the basis of federal question jurisdiction, however, this case was removed on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). As demonstrated by the standards set out above, the fraudulent joinder rules applicable to diversity removal *require* defendants to plead and prove the defense of failure to state a claim upon which relief can be granted. Defendants must show that there exists no possibility for recovery under rules of state law. Colorado courts would entertain a preemption defense applying well settled principles of federal law. *See Williams v. Speedster, Inc.,* 175 Colo. 73, 485 P.2d 728 (1971). Therefore, where removal is justified by allegations of fraudulent joinder, the federal court in Colorado may review claims for antitrust and unfair competition under these established legal rules to determine whether there is a possibility of recovery against the non-diverse defendant. *See McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987); *Roe v. General Am. Life Ins. Co.,* 712 F.2d 450, 452 n. * (10th Cir.1983); *Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82, 85 (10th Cir.1964). The fact that removal doctrine views preemption defenses with skepticism in one context does not preclude a defendant from arguing the defense of preemption in a context where all other pleading defenses are appropriate.

### 2. Preemption of State Regulation of CRS Services.

The Supremacy Clause of Article VI of the United States Constitution provides Congress with the power to preempt state law. *Louisiana Public Service Comm'n. v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). The standards by which a court reviews the interplay between state and federal law under the Supremacy Clause are well settled. *California v. ARC America,* 490 U.S. 93, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). Preemption occurs when (1) Congress, in enacting a federal statute, expresses a clear intent to preempt state law, (2) there is outright or actual conflict between federal and state law, (3) compliance with both federal and state law is in effect physically impossible, (4) there is an implicit barrier within federal law to state regulation in a particular area, (5) federal legislation is so comprehensive as to occupy an entire field of regulation, leaving no room for states to supplement federal law, (6) state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress, or (7) federal regulations promulgated within the scope of congressionally delegated agency authority have any of the above effects. *Louisiana Public Service Comm'n. v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986); *see also California v. ARC America,* 490 U.S. 93, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989). Defendants contend express, implied, and regulatory preemption prevent any possibility of recovery on state law antitrust and unfair competition claims in this litigation.

As part of the Airline Deregulation Act of 1978, Congress expressly preempted the application of state law to certain areas of the interstate airline industry:

> [N]o state or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier....

49 U.S.C.App. § 1305(a)(1); *see Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408, 1416 n. 11 (9th Cir.1984). The statute has the effect of preempting claims under state law where those claims relate to the rates, routes, or services of interstate air carriers like United and Frontier. *Id.,* at 1415. Early application of the preemption statute posed problems for courts because Congress did not repeal the "savings clause" enacted as part of the Federal Aviation Act of 1958:

> [N]othing contained in this chapter shall in any way abridge or alter remedies now existing at common law or by statute,

but the provisions of this chapter are in addition to such remedies.

49 U.S.C.App. § 1506; *see Hingson,* 743 F.2d at 1416 n. 11. In resolving the apparent conflict between the two provisions, the court may look to the language of the statute, the existence of federal regulation in the area, and relevant legislative history. *See Hingson,* 743 F.2d at 1415, 1416 n. 11.

Plaintiff contends that the court may not look beyond the language of the statute where it is possible to reconcile apparent conflicts to maintain the significance of both provisions. *See Nevada Power Co. v. Watt,* 711 F.2d 913, 920 (9th Cir.1983). Plaintiff contends that the provisions can be reconciled by finding that preemption does not attach to the provision of CRS services, but that the word "services" refers only to flight operations. We have considered and reject plaintiff's theory. State tort remedies for misconduct in relation to flight operations have long been the exclusive means by which injured passengers could recover from airlines in air crash cases and Congress has several times rejected the enactment of federal law in the area. *See In re Air Crash Disaster at Stapleton International Airport,* 721 F.Supp. 1185, 1187–88 (D.Colo.1988), Order MDL 751–16, 720 F.Supp. 1445, 1451–52 (D.Colo.1988) (released for publication). We find that the statutes can only be reconciled by reviewing the legislative and regulatory history of relevant federal law to determine whether CRS services fall within the statutory phrase "rates, routes, or services." *Hingson,* 743 F.2d at 1415; *see also French v. Pan American Express, Inc.,* 869 F.2d 1, 5 (1st Cir.1989) (goal of national uniformity evidenced in legislative history demonstrates § 1305 preemption attaches to pilot qualification regulations, preempting state drug testing laws).

 Federal law preempts state laws regulating the provision of CRS services and the relation between travel agents and CRS providers. *First,* 49 U.S.

C.App. § 1305(a)(1) expressly preempts state law, regardless of actual conflict between state and federal law, where the state attempts to enforce law "related to" air carrier rates, routes, or services. *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408, 1415 (9th Cir.1984); *see also Dyksen v. Eastern Airlines, Inc.,* 865 F.2d 1271 (9th Cir.1989) (available on WEST-LAW). Courts in the Ninth Circuit, reviewing the statutory language and legislative history on various occasions, have arrived at a standard for determining what services of an airline fall within the preemption statute. State law may not be enforced to regulate services of an interstate air carrier that are unique or peculiar to the airline industry. *Air Transport Ass'n v. Public Utilities Comm'n of California,* 833 F.2d 200, 207 (9th Cir.1987), *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988) (telephone reservation communications of an individual airline similar to those of hotels and car rental companies); *Federal Express Corp. v. California Public Utilities Comm'n,* 716 F.Supp. 1299, 1300 (N.D.Cal.1989) (released for publication) (intrastate trucking portion of freight services not uniquely an airline service). CRS services are unique to the airline industry. Centralized reservation systems for competing airlines, which serve functions beyond reservations for a single airline, are unlike services provided in any other industry. In fact, Frontier's complaint is replete with allegations that the CRS system and the access it provides airlines and travel agents is not only unique to the airline industry, but essential to competition for passengers.[6]

*Second,* the House Report on the Civil Aeronautics Board Sunset Act of 1984 is clear and convincing evidence that Congress intended to preempt state law in the regulation of CRS services and to provide federal antitrust remedies as the exclusive means for private enforcement of those regulations. *See* H.R.Rep. 98–793, 98th Cong., 2d Sess. 4 (1984), U.S.Code Cong. &

---

**6.** To the extent that Frontier's theory of monopolization is based on allegations that CRS systems are an "essential facility," our conclusion that CRS services are peculiar to the airline industry should not be construed to suggest a finding that Apollo is an "essential facility." *See In re Air Passenger CRS Antitrust Litigation,* 694 F.Supp. 1443 (C.D.Cal.1988).

Admin.News 1984, p. 2857. In order to show that the Airline Deregulation Act of 1978 impliedly preempts state regulation of competition for and use of CRS services, defendants must present "evidence of a congressional intent to pre-empt the specific field covered by the state law." *Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1, 6, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1 (1986); *see also Federal Express Corp. v. California Public Utilities Comm'n*, 716 F.Supp. 1299, 1301 (N.D.Cal. 1989) (released for publication); *see also French v. Pan American Express, Inc.*, 869 F.2d 1, 5 (1st Cir.1989) (preemption may be inferred from statement of goals of uniformity contained in legislative history). In completing the legislative task of deregulating domestic aviation, the Report states that Congress set out to terminate certain functions of the Civil Aeronautics Board and to transfer other functions to the Secretary of Transportation. The Report specifically discusses ongoing federal regulatory procedures designed to address allegations that large airlines abuse their CRS operations to unlawfully restrain competition in the sale of airline transportation. Specifically, the report discusses (1) abuses in regard to the "interlining" of non-CRS airlines like Frontier on systems owned by larger airlines through use of restrictive contracts, and (2) abuses through the practices employed to lease CRS terminals to travel agents. The allegations discussed in the report parallel those of Frontier in this litigation. The Report concludes that the Sunset Act appropriately preserves the rule making authority of the Secretary and the Federal Trade Commission to address these areas of concern. With regard to preemption, the Report states that as to those areas of concern addressed,

> In addition to protecting consumers, federal regulation insures a uniform system of regulation and preempts regulation by the states. If there was no Federal regulation, the states might begin to regulate these areas, and the regulations could vary from state to state. This would be confusing and burdensome to airline passengers, as well as to the airlines.

H.R.Rep. 98–793, 98th Cong., 2d Sess. 4 (1984), U.S.Code Cong. & Admin.News 1984, p. 2860. The Report also concludes that the statute envisions private support for federal regulatory efforts through the antitrust laws and the broader proscriptions of Section 411 of the Federal Aviation Act. *See also* 14 C.F.R. §§ 255.1–255.8 (regulations related to CRS programming, travel agent agreements, marketing information, discriminatory booking fees and federal antitrust remedies).

█ Enforcement of Colorado law as sought in the complaint would require findings that defendants (1) attempted to monopolize the CRS market through anticompetitive practices, (2) attempted to monopolize airline transportation through anticompetitive abuse of CRS services, (3) enticed CRS leases and travel bookings through unlawful below-cost pricing, and (4) enticed CRS leases and travel bookings through unlawful contract terms and conditions. The legislative history of federal efforts to regulate CRS services and uses clearly demonstrates that the preemption statute should be applied to eliminate the risk that CRS providers could be subject to varying state standards of unlawful competition. *See French v. Pan American Express, Inc.*, 869 F.2d 1, 5 (1st Cir.1989) (preemption statute applies where local restrictions would frustrate federal goals of uniformity); *Anderson v. US Air, Inc.*, 818 F.2d 49, 57 (D.C.Cir.1987) (same); *Illinois Corporate Travel v. American Airlines*, 682 F.Supp. 378, 379 (N.D.Ill.1988) (preemption statute applies because state regulation of relationship between travel agents and airlines could cause ticket prices to vary from state to state). Because state law may not be applied to define anticompetitive use of CRS services, there is no possibility that plaintiff will recover from non-diverse defendant Kent on its state law claims for antitrust and unfair trade practices.

### C. *Tortious Interference Claims.*

█ Frontier's remaining two claims for relief allege liability for tortious interference with contract and with prospective contractual relations. Frontier alleges that

defendants (1) improperly interfered with contracts which "required" travel agents to book reservations on Frontier flights in accordance with the standards and obligations of the principal-agent relationship, and (2) improperly interfered with business relationships and expectancies with third-persons, including travel agents and passengers, from which Frontier had a reasonable probability of obtaining future economic benefit. There is no possibility that Frontier will prevail on these claims against defendant Kent.

*First,* the same preemption analysis set forth above would preempt a states attempt to enforce its law to determine whether conduct related to the provision of CRS services was improper. *See R–G Denver, Ltd. v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469, 1475–77 (10th Cir. 1986) (standards of improper interference with prospective relations of competitor turn of finding that conduct is an unlawful restrain of trade); *Memorial Gardens v. Olympian Sales & Management,* 690 P.2d 207, 210 and n. 7 (Colo.1984) (standards for determining whether conduct is improper interference with contract); *see also Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619, 623 (Colo.App.1988) (impropriety is central finding of both torts). The claims incorporate the allegations of improper conduct against defendant Kent set forth above. Whether improper leverage was exercised against travel agents and passengers is a matter within the areas of concern addressed in the House Report on the Civil Aeronautics Board Sunset Act of 1984. As with claims for anticompetitive conduct, enforcement of these state law claims on the conduct alleged falls within the preemption statute. *French v. Pan American Express, Inc.,* 869 F.2d 1, 5 (1st Cir.1989) (preemption where state claim would go to improper labor standards subject to federal regulation); *Anderson v. US Air, Inc.,* 818 F.2d 49, 57 (D.C.Cir.1987) (same with regard to airline's duty of courteous service); *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408, 1415 (9th Cir.1984) (same with regard to handicap passenger seating policies).

*Second,* defendants have demonstrated that plaintiff cannot pierce the agents privilege for tortious interference where his conduct is (a) within the scope of his authority as an employee, and (b) done for the purposes of the employer. *Trimble v. City and County of Denver,* 697 P.2d 716, 726 (Colo.1985); *Zappa v. Seiver,* 706 P.2d 440, 442 (Colo.App.1985); *see also Los Angeles Airways, Inc. v. Davis,* 687 F.2d 321, 325–28 (9th Cir.1982). The privilege for tortious interference is an exception to the general rule, cited by plaintiff, that an employee may be personally liable for torts committed on behalf of his employer. *See Galie v. Ram Associates Management Services, Inc.,* 757 P.2d 176, 177 (Colo.App. 1988). Plaintiff does not allege that defendant Kent was motivated by the sole purpose of inducing the breach alleged. Nor does plaintiff offer any evidence to counter statements in Kent's affidavit that his efforts to persuade travel agents to subscribe to Apollo were merely an implementation of corporate sales and pricing policy formulated at United headquarters in Illinois. *See* Kent Affidavit of April 14, 1989, ¶ 6. Affidavits of travel agents offered by plaintiff do not counter this point and are of questionable relevance given that they describe events occurring *after* Frontier ceased operations. Where agency law precludes liability of an agent for contracts or acts taken on behalf of the corporation, acts within the scope of the agent's authority or ratified by the corporation, joinder of the agent will not preclude removal. *Kelly v. Drake Beam Morin, Inc.,* 695 F.Supp. 354, 356 (E.D.Mich.1988); *cf. Barnes v. Southwestern Bell Telephone Co.,* 596 F.Supp. 1046, 1049–50 (W.D.Ark.1984) (action remanded where plaintiff alleged agent personally liable for entering into agreement not authorized by principal). Where uncontroverted affidavits demonstrate a corporate agent may not be found liable on the theory alleged, the court may conclude that the agent was joined solely for the purposes of defeating diversity. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987); *Lobato v. Pay Less Drug Stores,* 261 F.2d 406, 408 (10th Cir.1958); *Monroe v. Consolidated*

*Freightways, Inc.,* 654 F.Supp. 661, 663 (E.D.Mo.1987).

*Third,* plaintiff has not alleged interference with contract against defendant Kent for which it may recover under state law. Plaintiff does not contest that the contract at issue is the standard Airlines Reporting Contract ("ARC") establishing the agency relationship between airlines and travel agencies. Nor does plaintiff contend that the contract "requires" agents to book flights on Frontier as alleged in the complaint. In its reply brief, plaintiff contends, instead, that defendant Kent induced agents to violate a term of industry custom attaching to such contracts which requires agent neutrality and objectivity in ticket sales. The Colorado Supreme Court has rejected claims for tortious interference with contract which would attach liability on the basis of inferred provisions having the effect of rewriting non-restrictive contracts to guarantee a certain amount of business. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 577 P.2d 748, 750–51 (1978); *see also R–G Denver, Ltd. v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469, 1475 (10th Cir.1986). We have reviewed the ARC agreement presented by defendants. Plaintiff has tendered no evidence that the contract at issue contains any other relevant provisions. The ARC agreement is a non-restrictive contract which defendant Kent could not have induced travel agents to breach in the manner alleged.

D. *Conclusion.*

For the reasons stated above, we find that defendants have met their burden of demonstrating that there is no possibility plaintiff could recover from defendant Kent on any of the claims alleged. Therefore, defendant Kent's joinder in this litigation does not destroy diversity. *Roe v. General Am. Life Ins. Co.,* 712 F.2d 450, 452 n. * (10th Cir.1983); *Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82, 85 (10th Cir.1964). Furthermore, defendants have demonstrated that plaintiff has failed to state a claim against defendant Kent upon which relief could be granted. Accordingly, we find the complaint was properly re-

moved pursuant to 28 U.S.C. § 1441(b) and dismiss claims against defendant Kent. *See Monroe v. Consolidated Freightways, Inc.,* 654 F.Supp. 661 (E.D.Mo.1987). We find also that the preemption analysis set forth above goes to claims alleged against defendant United as well. In the interest of expediting the litigation, plaintiff is directed to file an amended complaint, stating claims under federal law where appropriate.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand, filed May 15, 1989, is DENIED; it is further

ORDERED that Defendants' Motion to Dismiss Claims Against Frank R. Kent pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed June 1, 1989, is GRANTED; the complaint and all claims stated therein against defendant FRANK R. Kent under Colorado law is DISMISSED WITH PREJUDICE; it is further

ORDERED that plaintiff is DIRECTED to file an amended complaint stating claims under federal law where appropriate.